CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 18 2013

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT J. COLLIER, | ) | Case No. 7:13-cv-00104-JCT |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| LAND & SEA RESTAURANT CO., LLC | ) | |
| d/b/a FRANKIE ROWLAND'S | ) | |
| STEAKHOUSE, | ) | |
|     Defendant/Third-Party Plaintiff, | ) | |
| | ) | By: James C. Turk |
| v. | ) | Senior United States District Judge |
| | ) | |
| PERFORMANCE FOOD GROUP, INC. | ) | |
| d/b/a PERFORMANCE FOOD SERVICE- | ) | |
| VIRGINIA, | ) | |
|     Third-Party Defendant/ | ) | |
|     Fourth-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WEAVER FRESH SEAFOOD & | ) | |
| PRODUCE, | ) | |
|     Third-Party Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAM RUST SEAFOOD & PRODUCE, | ) | |
|     Fourth-Party Defendant. | ) | |

Pending before the court is a motion to dismiss by Fourth-Party Defendant Sam Rust Seafood & Produce ("Sam Rust"), ECF No. 40, in which it seeks dismissal of the common law indemnification claim brought by Performance Food Group, Inc. d/b/a Performance Food Service-Virginia ("PFG") in the Fourth-Party Complaint. The Court concludes that the express indemnification clause in the written contract between PFG & Sam Rust governs the indemnification obligations between the two parties and that it precludes any implied or common law indemnification claim in this case. For this reason, explained in more detail below, Sam

Rust's motion to dismiss, ECF No. 40, is **GRANTED** and the common law indemnification claim asserted in the Fourth-Party Complaint against Sam Rust is hereby **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

Plaintiff Robert J. Collier alleges that he suffered personal and bodily damages due to food poisoning after consuming "unwholesome food," including shellfish, at Defendant's restaurant on April 14, 2011. See ECF No. 17, Amended Complaint. The Amended Complaint asserts a common law negligence claim, as well as claims for breaches of the implied warranties of merchantability and of fitness for a particular purpose. See generally id. After filing its Answer, Defendant Land & Sea filed an Amended Third-Party Complaint against two entities that supplied the shellfish that Collier allegedly consumed—PFG and Weaver Fresh Seafood & Produce. ECF No. 30. The Amended Third-Party Complaint contains the same causes of action against each of the third-party defendants as the Amended Complaint, i.e., negligence and breaches of the implied warranties of merchantability and of fitness for a particular purpose. See generally id.

In addition to filing an answer denying the allegations against it, PFG filed a Fourth-Party Complaint against Sam Rust. ECF No. 29. The Fourth-Party Complaint alleges that Sam Rust supplied PFG with the shellfish that it, in turn, provided to Land & Sea. ECF No. 29 at ¶¶ 5-6. According to PFG, Sam Rust provided the shellfish at issue to PFG pursuant to a written contract, titled a "Foodservice Products Supplier Agreement dated January 29, 2009" (hereinafter "the Agreement"). Id. at ¶ 6. In the Fourth-Party Complaint, PFG claims that to the "extent the shellfish is found to be deficient and/or unsafe, to the extent that the Plaintiff may recover from Land & Sea and to the extent that Land & Sea may recover from PFG, Sam Rust would be liable to PFG for a judgment of common law indemnification and/or contribution for

2

its own negligence and/or breach of the implied warranty of fitness for human consumption." ECF No. 29 at ¶ 5. PFG asks for a judgment of "contractual indemnification against" Sam Rust pursuant to the terms of the Agreement between Sam Rust and PFG, "and/or a judgment of common law indemnification and/or contribution, including the payment of all attorneys' fees and costs incurred in the defense of this matter." Id. at ¶ 6.

Now pending before the Court is Sam Rust's motion to dismiss, which seeks dismissal of the claim of common law indemnity in the Fourth-Party Complaint. See ECF No. 40, 41. PFG has filed a response in opposition to the motion to dismiss, ECF No. 45, and Sam Rust has filed a reply, ECF No. 46. The Court heard argument on the motion during a September 6, 2013 hearing, and the motion is now ripe for disposition.

## II. DISCUSSION

### A. STANDARD OF REVIEW

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true all of the complaint's factual allegations and take the facts in the light most favorable to the plaintiff. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing the legal sufficiency of a claim, however, the Court "need not accept the legal conclusions drawn from the facts." Id.

### B. PFG'S "COMMON LAW INDEMNITY" CLAIM

#### 1. Effect of the Express Agreement to Indemnify

The sole issue raised by the pending motion to dismiss is whether, under Virginia law, PFG's claim of "common law indemnity" can survive when there is an "express contractual

3

provision for indemnity between the parties."[1] ECF No. 41 at 1. Specifically, Paragraph 14 of the Agreement between PFG and Sam Rust provides:

> 14. <u>Indemnification: Insurance</u>
>
> A. <u>Indemnification</u>. [Sam Rust] will indemnify, defend, and hold PFG, its affiliates and subsidiaries and their officers, directors, employees and agents, as well as any customers of PFG and its subsidiaries harmless from and against any allegations asserted or damages, liabilities, losses, costs or expenses (including reasonable attorneys' fees) sought in any claim, action, lawsuit or proceeding connected with or arising out of any of the following (collectively, "Claims"):
>
> . . .
>
> 2) Death or injury to any person, damage to any property, or any other damage or loss resulting or claimed to have resulted, in whole or in part, from any quality or other defect in the Product, whether latent or patent, or failure of the Product to comply with any express or implied warranties or any claim of strict liability in tort relating to the Product;
>
> . . .; or
>
> 5) Failure to comply with any provisions of this Agreement.
>
> Notwithstanding the foregoing, [Sam Rust] shall not be liable to PFG to the extent PFG's damages are determined to result from PFG's own gross negligence or willful misconduct. [Sam Rust] shall use counsel reasonably satisfactory to PFG in the defense of such Claims. PFG shall, within thirty (30) days after receipt of notice of a Claim against PFG, notify [Sam Rust] thereof;

---

[1] The Court notes at the outset that it is difficult to discern whether Sam Rust and PFG are referring in their filings to the same type of indemnity. The Fourth-Party Complaint references "common law indemnification," while Sam Rust's motion refers to "implied indemnification," and PFG's opposition memorandum refers to "equitable indemnification." As discussed in <u>Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.</u>, 843 F. Supp. 1027, 1063 n.21 (D.S.C. 1993), there is no clear nomenclature among state and federal courts for different types of indemnity, nor do courts seem to agree on what elements constitute even identically-named types of indemnity. For example, "implied indemnity" and "equitable indemnity" are occasionally used interchangeably" but "implied contractual indemnity" is also used to refer to the same type of indemnity. <u>Id.</u> Additionally, as discussed <u>infra</u> at Section II.B.2, the Court believes there is a distinction under Virginia law between contractual indemnity (whether express or implied) and equitable indemnity.

> provided, however, that failure of PFG to provide such notice to [Sam Rust] shall *not* limit the defense or indemnification obligations, except to the extent that the delay has a material adverse effect upon the ability of [Sam Rust] to defend such Claim.

ECF No. 29, Ex. A at 3, ¶ 14. The Agreement also contains an integration clause that states that it "constitutes the entire Agreement and understanding between the parties regarding the subject matter hereof, and supersedes and merges all prior discussions and agreements between them relating thereto." Id. at 4, ¶ 15.

Sam Rust argues that there is "no implied duty of indemnity when the parties have reduced an indemnification agreement to writing." ECF No. 41 at 3. Sam Rust acknowledges there are no cases from the Supreme Court of Virginia on point, but cites to a Fourth Circuit case which holds that courts should not 'resort to implied indemnity principles . . . when an express indemnification contract exists." ECF No. 41 at 3 (citing Fidelity & Dep. Co. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983) ("Fidelity & Deposit")). Sam Rust also cites, without discussion, to four other cases that have cited Fidelity & Deposit for the same proposition. ECF No. 41 at 3-4 (citing Dacotah Mktg. & Research, LLC v. Versatility, Inc., 21 F. Supp. 2d 570, 580 (E.D. Va. 1998); Sanderling v. Donohoe Co., Inc., 47 Va. Cir. 345, 346 (Va. Cir. Ct. 1998); Transamerica Premier Ins. Co. v. Turf Specialists of N. Va., Inc., 31 Va. Cir. 26, 28 (Va. Cir. Ct .1993); and Fairfax Cty. Bd. of Supervisors v. Culbertson Constr. Co., 12 Va. Cir. 118, 120 (Va. Cir. Ct. 1987)).

In its response, PFG contends that the cases Sam Rust relies upon do not control the outcome here because those cases all deal with either surety agreements or they are construction cases. ECF No. 45 at 1-2. PFG posits that in the context of a products liability case like this one, "the rights and obligations of the parties are not determined solely by contract, but by operation of law." Id. It points specifically to Virginia Code sections 8.2-314 and 315, which govern the

5

creation of implied warranties in the sale of products, such as the shellfish at issue here. See Va. Code Ann. §§ 8.2-314, 315; see also Va. Code Ann. § 8.2-316 (describing how such implied warranties may be excluded or modified). PFG cites to no cases or other authority, however, that holds that the principle of Fidelity & Deposit should not apply in the products liability context, nor does it explain why parties who are suppliers of goods to others cannot reach—and be bound by—their own agreement as to indemnification.

Moreover, a similar rule has been applied in other jurisdictions, outside the construction or surety context. For example, New Zealand Kiwifruit Mktg. Bd. v. City of Wilmington, 825 F. Supp. 1180 (D. Del. 1993) involved a plaintiff who had shipped fruit that was destroyed due to faulty refrigeration while in a port-warehouse facility operated by the defendant city. Id. at 1182. The contract between the city and one of the co-defendants, who was partially responsible for the operation or maintenance of the refrigeration equipment at the port, contained an express indemnification provision. Id. 1184, 1194-95. Applying Delaware law, the court concluded that the indemnification provision governed and that no contrary or different duty to indemnify would be implied. Id. at 1194-95. In ruling, the court noted "Delaware courts have clearly limited implied indemnification to situations in which no express indemnification exists. 'When the parties to a contract have entered into a written agreement expressly setting forth one party's indemnity liability, there is no room for any enlargement of that obligation by implication.'" Id. at 1194 (citation omitted).

Similarly, in C&E Servs., Inc. v. Ashland, Inc., 498 F. Supp. 2d 242, 266-67 (D.D.C. 2007), a case involving underlying claims for negligent misrepresentation, fraud, and the breach of the implied covenant of good faith and fair dealing, the court concluded that District of Columbia law required dismissal of the plaintiffs' equitable indemnification claim because there was an express contract provision governing indemnification. Other courts, too, have applied the

same principle outside the surety or construction context. See, e.g., Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1218-19 (5th Cir. 1986) (applying federal maritime law and refusing to "imply a separate indemnification obligation arising out of an [warranty of workmanlike performance], because an express indemnification agreement existed between the same parties); Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture N.J., Inc., 739 F. Supp. 2d 821, 830-31 (D. Md. 2010) (under Maryland law, a claim for common law indemnification, which is a quasi-contractual remedy, was unavailable to the plaintiff because an express indemnity agreement existed and "[a]ny implied common law indemnification scheme would either contradict or add to the[] clearly defined circumstances" under which indemnification is required in the express agreement); General Motors Corp. v. Maritz, Inc., 2009 WL 1259376, at *3-*4 (D. Ariz. May 6, 2009) (applying Arizona law to action for indemnification in case where original claim was based on personal injuries at event sponsored by General Motors, who contracted with Martiz Travel Company to provide services for the event, and concluding that both "implied contractual indemnity" and "equitable indemnity" were precluded by the existence of an express indemnity provision between GM and Maritz).

Based on the cases cited in the preceding two paragraphs, which applied the basic principle set forth in Fidelity & Deposit, the Court concludes that principle is not limited to surety and construction cases, as PFG argues. Particularly since PFG has not cited to a single case stating that the rule should not apply in the products liability context, the Court believes it should apply here.

PFG suggests, however, that Sam Rust's motion is an attempt to circumvent any liability for the breach of implied warranties in this case, and that application of the Fidelity & Deposit rule here would somehow conflict with Virginia's laws governing implied warranties. Put differently, according to PFG, "Sam Rust's argument is that . . . PFG cannot seek equitable

7

indemnification as a redress for breaches of the implied warranties." ECF No. 45 at 2. It is not at all clear to this Court that the intended purpose of Sam Rust's motion is to avoid indemnity liability for the implied warranty claims. At least three facts suggest that is not the intended purpose of the motion.

First, nowhere in Sam Rust's motion to dismiss does it state that it would not be obligated to indemnify PFG under the contract for any breach of the implied warranties. Second, in its Reply, Sam Rust expressly denies that it "seek[s] to disclaim implied or express warranties as to the quality of the food." ECF No. 46 at 1.

Third, the contractual indemnification provision itself requires Sam Rust to indemnify PFG for damages arising out of a claim for "[d]eath or injury to any person, . . . resulting or claimed to have resulted, in whole or in part, from any quality or other defect in the Product, whether latent or patent, or <u>failure of the Product to comply with any express or implied warranties</u> or any claim of strict liability in tort." ECF No. 29 at Ex. A, ¶ 14 (emphasis added). This obligation is relieved if the damages are "determined to result from PFG's own gross negligence or willful misconduct," but it otherwise requires that Sam Rust indemnify PFG—and "defend" PFG and hold harmless PFG and related entities, including customers—for the precise types of claims asserted in this lawsuit, including the implied warranty claims. <u>Id.</u> Thus, while the Court is not asked to decide the issue today and does not do so, it appears that the express indemnification clause here is sufficiently broad that it could require Sam Rust to indemnify PFG if the seafood provided by Sam Rust failed to comply with any warranties implied by law. Thus, it is unclear why implied indemnification would even be necessary to make PFG whole.[2] In any

---

[2] Because of this broad indemnification duty in the Agreement, the Court is uncertain what Sam Rust hopes to accomplish with its motion. In fact, Sam Rust's liability under the Agreement is broader in significant respects than equitable indemnity would be. For example, while contractual indemnity may include payment of attorneys' fees and costs (and such payment is contemplated by the parties'

event, nothing about the fact that the case involves implied warranty claims convinces this Court that the rule of Fidelity & Deposit should not apply.[3]

### 2. To the Extent PFG Is Arguing that A Viable Claim to Equitable Indemnification Can Co-Exist with a Contract of Indemnity, the Argument Is Unpersuasive

In light of the parties' imprecise nomenclature regarding "indemnification," see supra at note 1, the Court briefly considers whether PFG's arguments are implicitly based not so much on a distinction between type of claims or cases, but rather on the type of indemnity being sought. That is, perhaps PFG's argument is that "equitable indemnification," a corollary to contribution, can co-exist with an express contract for indemnification, even if implied contractual indemnity cannot.

Although it is far from clear,[4] Virginia law does seem to recognize as distinct "indemnity" and "equitable indemnity." The former is grounded in contract principles and is quasi-contractual in nature. Cf. Va. Elec. & Power Co. v. Wilson, 277 S.E.2d 149 (Va. 1981)

---

Agreement here), implied or common law indemnification generally does not allow the recovery of attorneys' fees. Hartford Acc. & Indem. Co. v. Williams, 291 F. Supp. 103, 106 (W.D. Va. 1968). The only way in which it appears to be more limited than equitable indemnity might be is that Sam Rust is relieved of any duty to indemnify if the damages at issue are caused by PFG's "gross negligence." ECF No. 29 at Ex. A, ¶ 14. But there have been no allegations of gross negligence here by any party and, in any event, equitable indemnification would be unavailable to PFG is it is found to be grossly negligent. Carr v. The Home Ins. Co., 463 S.E.2d 457, 458 (Va. 1995) (equitable indemnification is available to a party who is without personal fault and becomes legally liable for damages caused by the negligence of another).

[3] Whittle v. Timesavers, Inc., 614 F. Supp. 115 (W.D. Va. 1985), brought to the Court's attention during argument, does not compel a contrary result. In Whittle, another judge of this court concluded that an implied contract of indemnity exists where there is an implied warranty of merchantability. 614 F. Supp. at 119. Assuming Whittle remains good law—and has not been abrogated by Carr as Sam Rust contends—it does not govern the outcome here. In Whittle, there was no express indemnification provision and therefore the court thus had no occasion to decide whether a right to implied indemnity would still exists in the face of an express indemnity provision.

[4] See generally Va. Prac. Prod. Liability § 6:8 (2013) (discussing a "confusing line of case law" that includes Va. Elec. & Power Co. v. Wilson, 277 S.E.2d 149 (Va. 1981), Carr, 463 S.E.2d 457, and the "evasive decision" in Pulte Home Corp. v. Parenx, Inc., 579 S.E.2d 188, 193 (Va. 2003), and concluding that law only makes sense if equitable indemnity, as distinct from contractual indemnity, exists under Virginia law).

9

("The distinguishing feature of indemnity is that it must necessarily grow out of a contractual relationship."). As to this type of indemnity (which is also the type generally at issue in the surety and construction cases cited by the parties), the Court believes it clear (as set forth in the preceding section) that the principle of Fidelity & Deposit should apply.

By contrast, "equitable indemnification" stems from equitable principles and "arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another." Carr v. The Home Ins. Co., 463 S.E.2d 457, 458 (Va. 1995). In such a case, the innocent party can "recover from the negligent actor for the amounts paid to discharge the liability." Id. Additionally, "a prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage." Id.

Some Virginia courts and courts applying Virginia law have recognized these two types of indemnification. See, e.g., AIU Ins. Co. v. Omega Flex, Inc., 2012 WL 1119791, at *4 (W.D. Va. Apr. 3, 2012) (recognizing a distinction under Virginia law between "contractual indemnification," which arises by contract, and "equitable indemnification" which is equitable in nature); RML Corp. v. Lincoln Window Prods., Inc., 67 Va. Cir. 545, 2004 WL 3568223, at *15-16 (Va. Cir. Ct. Dec. 3, 2004) (citing Carr for the proposition that "[t]he Supreme Court of Virginia has recognized that claims for indemnity may arise in non-contractual cases" and collecting Virginia circuit court authority ruling that "active/passive indemnity"—another term for equitable indemnity—arises between parties from equitable considerations); cf. Pulte Home Corp. v. Parenx, Inc., 579 S.E.2d 188, 193 (Va. 2003) (recognizing that the Supreme Court of Virginia has held both that indemnity that must grow out of a contractual relationship and that equitable indemnification is available in Virginia, but refusing to reconcile the two confusing holdings).

But even if PFG's argument were construed as one that *equitable indemnification*

(referred to in PFG's complaint as "common law indemnification") can co-exist with an express indemnification provision and is not precluded simply because an express contract of indemnification exists, the Court finds such an argument unpersuasive. Critically, again, the Court could not find any authority holding that to be true under Virginia law, and PFG has cited to none. Instead, the more reasonable rule is that the express provision must control the indemnity obligations, at least where, as here, the indemnification provision appears to contemplate the precise claims at issue in the lawsuit. As explained by the Supreme Court of Virginia, "the purpose of an indemnity provision is to pre-determine how potential losses incurred during the course of a contractual relationship will be distributed between the potentially liable parties." Estes Exp. Lines, Inc. v. Chopper Exp., Inc., 641 S.E.2d 476, 479 (Va. 2007). A party is permitted to indemnify itself, "against its own negligence[,] through a contractual provision negotiated at arm's length with a willing indemnitor." Id. at 480. When such an indemnification provision exists, it should be enforced. See id.; Farmers Ins. Exchange v. Enter. Leasing Co., 708 S.E.2d 852, 856 (Va. 2011) ("A party to an indemnification agreement is entitled to enforce the agreement according to its agreed terms.") (citation omitted).

For all of these reasons, the Court concludes that the Paragraph 14 of the Agreement between Sam Rust and PFG controls the parties' rights as to indemnification and that no different rights should be implied, either through implied contractual indemnification or through equitable indemnification.

### III. CONCLUSION

For these reasons, the Court concludes that Sam Rust's motion to dismiss, ECF No. 40, should be **GRANTED** and that PFG's claim for "common law indemnification" should be, and

the same hereby is, **DISMISSED WITH PREJUDICE**.[5] The remaining claims in the Fourth-Party Complaint, ECF No. 29, are unaffected by this Order.

The Clerk of the Court is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

**ENTER**: This 18th day of September, 2013.

_/s/ James C. Turk_
Senior United States District Judge

---

[5] In its Reply, Sam Rust further argues that a claim for equitable indemnification is not viable here because no finding of negligence has yet been made, and such a finding is a prerequisite to an equitable indemnification claim. Sam Rust thus contends, any claim for equitable indemnification is not yet ripe and must be dismissed without prejudice. See, e.g., AIU Ins. Co. v. Omega Flex, Inc., 2012 WL 1119791, at * 3 (W.D. Va. Apr. 3, 2012) (cited at ECF No. 46 at 3-4). But see Level 3 Commc'ns, LLC v. Webb, Inc., 2012 WL 2199262, at *5 (E.D. Va. June 14, 2012) (because Va. Code § 8.01-281(A) has "eliminated the procedural bar to third party practice that otherwise would result from the substantive rule governing accrual of derivative claims . . ., derivative indemnity claims may now be asserted together with the main action under Fed. R. Civ. P. 14(a)(5). See Kohl's Dep't Stores, Inc. v. Target Stores, Inc., 290 F. Supp. 2d 674, 689 n.20 (E.D. Va. 2003) (applying Fed. R. Civ. P. 14 and Va. Code § 8.01-281 to allow indemnity claim 'for potential future liability').")." In light of its ruling herein, the Court does not address this argument.