Case 7:13-cv-00104-JCT   Document 74   Filed 01/28/14   Page 1 of 9   Pageid#: 561

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 8 2014

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT J. COLLIER,<br>    Plaintiff,<br><br>v.<br><br>LAND & SEA RESTAURANT CO., LLC<br>d/b/a FRANKIE ROWLAND'S<br>STEAKHOUSE,<br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>PERFORMANCE FOOD GROUP, INC.<br>d/b/a PERFORMANCE FOOD<br>SERVICE-VIRGINIA,<br>    Third-Party Defendant/<br>    Fourth-Party Plaintiff,<br><br>v.<br><br>WEAVER FRESH SEAFOOD &<br>PRODUCE,<br>    Third-Party Defendant,<br><br>v.<br><br>SAM RUST SEAFOOD, INC.,<br>    Fourth-Party Defendant. | Case No. 7:13-cv-00104-JCT<br><br><br><u>MEMORANDUM OPINION</u><br><br><br>By: James C. Turk<br>Senior United States District Judge |

Pending before the court are motions for summary judgment filed by Fourth-Party Defendant Sam Rust Seafood ("Sam Rust"), ECF No. 57, and Performance Food Group, Inc. d/b/a Performance Food Service-Virginia ("PFG"), ECF No. 62. PFG's motion simply incorporates the arguments by Sam Rust, so both motions are premised on identical arguments. Specifically, Sam Rust and PFG argue that Land & Sea Restaurant Co., LLC ("Land & Sea") failed to notify PFG "within a reasonable time" of the potential claim against PFG, as required by Virginia Code Ann. § 8.2-607. Because PFG was not timely notified, it contends the statute

bars any claim against it and, consequently, also bars any claim against Sam Rust.

Land & Sea has filed a response in opposition, ECF No. 63, as has Plaintiff. ECF No. 64. Sam Rust has filed two reply memoranda. First, Sam Rust has filed a reply to Land & Sea's opposition, in which it addresses the merits of the summary judgment motion. ECF No. 66. Second, Sam Rust has filed a brief reply in response to Plaintiff's opposition, in which it argues that Plaintiff has no direct claim against PFG or Sam Rust and that Plaintiff thus has no standing to oppose the summary judgment motions. ECF No. 67 at 2-3. The Court heard argument on the motions on January 17, 2014, and they are now ripe for disposition.

For the reasons explained in more detail below, the Court concludes that the parties should be permitted to engage in further discovery before the Court rules as to whether the notice given was unreasonable as a matter of law or whether there are factual issues precluding summary judgment. As Plaintiff points out in his response, discovery has barely begun, and the parties simply do not know what precise notice was given by whom, to whom, and when. See generally ECF No. 64 at 7-8. In particular, the Court concludes that discovery should be permitted so the parties may determine more precisely what Land & Sea knew about Collier's claims and when, more precise date or dates of alleged telephone conversations between Land & Sea employees and the sales representative or others from PFG, and the substance of those alleged conversations. In short, there has been inadequate discovery to date on the issue of whether Land & Sea gave notice to PFG of the potential claim against it within a "reasonable time." See Va. Code Ann. § 8.2-607. Accordingly, both motions for summary judgment are **DENIED WITHOUT PREJUDICE**.

I. **PROCEDURAL BACKGROUND**

Plaintiff Robert J. Collier alleges that he suffered personal and bodily damages due to food poisoning after consuming "unwholesome food," including shellfish, at Frankie Rowland's

Steakhouse ("the Restaurant"), doing business as Land & Sea, on April 14, 2011. See ECF No. 17, Am. Compl. The Amended Complaint asserts a common law negligence claim, as well as claims for breaches of the implied warranties of merchantability and of fitness for a particular purpose. See generally id. After filing its Answer, Land & Sea filed an Amended Third-Party Complaint against the two entities that supplied the shellfish that Collier or others in his dining party allegedly consumed—PFG and Weaver Fresh Seafood & Produce. ECF No. 30. The Amended Third-Party Complaint contains the same causes of action against each of the third-party defendants as the Amended Complaint, i.e., negligence and breaches of the implied warranties of merchantability and of fitness for a particular purpose. See generally id. In addition to filing an answer denying the allegations against it, PFG filed a Fourth-Party Complaint against Sam Rust. ECF No. 29. The Fourth-Party Complaint alleges that Sam Rust supplied PFG with the shellfish that it, in turn, provided to Land & Sea. ECF No. 29 at ¶¶ 5-6. PFG asserts a claim for contractual indemnification against Sam Rust.[1]

## II.  APPLICABLE LEGAL STANDARDS

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(e), moreover, allows a court to give the parties "an opportunity to properly support or address" any assertion of fact. Furthermore, although no party has filed a Rule 56(e) affidavit expressly requesting additional discovery, both Plaintiff and Land & Sea have referred to the need for additional discovery regarding what notice was given and when. Cf. Harrods Ltd v. Sixty Internet Doman Names, 302 F.3d 214, 244-45 (4th Cir. 2002) (emphasizing the importance of the Rule 56[(e)] affidavit (previously in Rule 56(f)), but recognizing a district court's authority to

---

[1] PFG's Fourth-Party Complaint also included a claim for common law indemnification, but the Court dismissed that claim on Sam Rust's motion, concluding that the indemnification obligations between Sam Rust and PFG are governed solely by their contractual obligations. ECF No. 52, 53.

conclude that summary judgment is premature even in the absence of such an affidavit).

In this case, the critical issue is whether Land & Sea's claims against PFG are barred (and, in turn, PFG's claim against Sam Rust for indemnification is barred) because Land & Sea failed to give PFG notice of a potential claim against PFG within a reasonable time after discovering it. The parties agree that the notice requirement derives from Virginia Code Annotated, § 8.2-607(3)(a). In pertinent part, that statute provides that, where a tender of goods has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Va. Code Ann. § 8.2-607(3)(a). Comment 4 to that provision elaborates that "[t]he time of notification is to be determined by applying commercial standards to a merchant buyer." Id. cmt. 4. Additionally, Section 8.1A-205 instructs that "[w]hether a time for taking an action required by the Uniform Commercial Code is reasonable depends on the nature, purpose, and circumstances of the action." Va. Code Ann. § 8.1A-205.

### III. ANALYSIS

#### A. Factual Background Relating to Notice

As noted, discovery in this case has just begun, and depositions have not yet been taken, although some records have been produced and some written discovery propounded and answered. The following facts that relate to notice are taken primarily from that written discovery and gleaned from documents submitted by the parties with their memoranda.

On April 14, 2011, Plaintiff Collier and five dining companions ate a meal at the Restaurant. Late that evening, or in the early morning hours of Friday, April 15, 2011, Collier became very ill and was taken by ambulance to the hospital. His condition quickly progressed to a state of "intubation and sedation." While several other of his dining companions also experienced nausea or vomiting that evening, none experienced the severity of symptoms that

Collier apparently did.

On Saturday, April 16, 2011, a physician at Collier's hospital alerted the Virginia Department of Health ("VDH") concerning Collier's condition, and VDH opened an investigation on or about that same day. As part of that investigation, VDH conducted an inspection of the Restaurant with Head Chef James Nelson from approximately 2:30 p.m. to 4:00 p.m. on April 18, 2011, for fact-finding due to suspected food poisoning.[2] During the visit, the VDH representatives sought to verify what Collier ate. On the dining party's bill, there were five shellfish items, including an order of Oysters Rockefeller (the oysters would have been supplied by PFG) and a lobster. VDH requested that the remaining lobsters that had been in the tank that evening not be sold until further permission was given by VDH. Days later, VDH cleared the lobsters for sale.

In an affidavit, Nelson avers that VDH did not indicate during its inspection which, if any, of Frankie Rowland's food and drink products it thought was the cause of the alleged April 14, 2011 food-poisoning incident. Nelson also explains that he complied with VDH's request to provide the Restaurant's menu and recipes, invoices, receipts, and shellfish tags for the food and drink products served at the restaurant on April 14, 2011, and the bill for Collier's dining party. He also met with a VDH official approximately one week after the inspection and answered various questions about the preparation of various food and drink products served to Collier's dining party. Apparently, VDH never took any action or issued any citation to the Restaurant as a result of the inspection or this incident.[3]

---

[2] According to emails from various VDH personnel, neither Collier's physicians nor the VDH was certain what he was suffering from at that time or what had caused it; options included "botulism, paralytic shellfish poisoning, and Guillain-Barre syndrome." The extent to which this information was relayed to the Restaurant is unknown at this time.

[3] At the very least, no party has yet provided the Court with any evidence that any action was taken.

5

### B. Analysis of Parties' Contentions

PFG and Sam Rust argue that Land & Sea knew of a potential claim against PFG at least as of the date of the inspection and that it failed to notify PFG of a potential claim until nearly two years later, when it filed its Third-Party Complaint against PFG. They argue that this is not notice within a "reasonable time" as a matter of law and thus that the claims against them should be dismissed.[4]

In its response, Land & Sea points to two different incidents as proof of notice, both of which it contends were reasonable and timely notice in light of the information it knew or should have known at the time: (1) a telephone call from Nelson to a PFG sales representative at some point after the April 18, 2011 inspection; and (2) the service of the Third-Party Complaint several months after Land & Sea was served with Plaintiff's Complaint.

First, Land & Sea claims that it provided oral notice of a potential claim to PFG at some unspecified time after the inspection. Land & Sea has provided an affidavit from its head chef, Mr. Nelson, in which he avers that he told a sales representative from PFG that a diner had become ill after consuming food at the Restaurant. Specifically, he explains:

> After the VDH's April 18, 2011 inspection, I called Jennifer Mika, PFG's sales representative for [the Restaurant] and told her about the allegedly April 14, 2011 food-poisoning incident and the VDH's subsequent inspection of the restaurant.

ECF No. 63-3, Nelson Aff. at ¶ 11.

In its reply, Sam Rust raises a number of objections to Mr. Nelson's affidavit and testimony. In general terms, it contends that the affidavit is insufficiently specific as to the date

---

[4] It is apparently undisputed at this time that Sam Rust did not receive any notice concerning the claim against it from either Land & Sea or PFG until it was served with PFG's Third-Party Complaint, in 2013. According to PFG, this fact is irrelevant. PFG argued at the hearing before the Court that if PFG received timely notice from Land & Sea, its claims against Sam Rust survive because its sole claim is a contractual indemnification claim and its notice requirements are governed by the contract.

and time when Mr. Nelson allegedly phoned Ms. Mika, because it simply says that the call occurred "after" the inspection. See ECF No. 66 at 10-11. Although the affidavit does not provide a specific date or time, the Court does not believe this lack of specificity renders the affidavit meaningless. Instead, it simply raises a factual question—one that can be explored in further discovery—as to when such notice was given and what information was conveyed.

Sam Rust also argues that the Court cannot consider Mr. Nelson's testimony because neither Mr. Nelson nor Ms. Mika were identified as persons having knowledge about any notice in Land and Sea's initial Rule 26(a)(1) disclosures, and because Land & Sea did not provide that information in its written discovery responses to date. See ECF No. 66 at 2-4. At the hearing and in its written response to the motion, Land & Sea explained that Mr. Nelson is no longer employed by the Restaurant and that it did not learn about the phone call to PFG until approximately ten days before his affidavit was provided. Land & Sea is of course under a continuing obligation to supplement its discovery responses, and the Court presumes it will do so here. The Court declines, however, to refuse to consider Mr. Nelson's affidavit simply on the grounds that the telephone conversations he had after the inspection were not disclosed in Rule 26(a)(1), particularly in light of the representation of Land & Sea's counsel that Land & Sea did not learn about the phone calls until shortly before the affidavit was provided. Cf. Bailey v. Christian Broad. Network, 483 F. App'x 808, 810 (4th Cir. 2012) (quoting Rule 37(c)(1), which prohibits a party from relying on information not disclosed as required by Fed. R. Civ. P. 26(a) or (e) "unless the failure was substantially justified or is harmless").

Next, Sam Rust contends that even if that oral notice was given, it is insufficient under general rules governing notice to corporations, because Ms. Mika was not an individual who could receive notice on behalf of PFG. ECF No. 66 at 4-9, and because the content of the conversation was insufficient to convey adequate notice of a claim. Again, until Mr. Nelson and

Ms. Mika are deposed or the parties otherwise learn what they discussed, what she was told, and who else at PFG she may have notified, any ruling on this ground would be premature.

Land & Sea also argues that, even if the phone call from Mr. Nelson were disregarded, Land & Sea nonetheless gave notice to PFG within a reasonable time after learning that the claim against it potentially involved a PFG product.[5] A June 2011 letter from Collier's attorney did not identify any specific food or beverage product that Collier alleged caused his injuries, instead simply referring generally to "food poisoning." ECF No. 58-2, at 11. Based on this, Land & Sea claims that it did not know until it was served with Collier's lawsuit that Collier was claiming an injury from shellfish specifically and thus that his claim potentially implicated PFG's products. Moreover, as Land and Sea correctly notes, Collier's complaint does not allege "which of the five shellfish products served to his table on April 14, 2011 caused these alleged conditions or injuries." ECF No. 63 (citing Amended Complaint, ECF No. 17, at 1-6). In his answers to interrogatories, too, Collier does not specify which of the products he alleges caused his injuries. Instead, he states his belief that his injuries were caused by "toxins contained in the flesh of the seafood that he consumed on April 14, 2011[,]" but "defer[s] to the opinions of his treating physicians and retained experts." ECF No. 63-4 at 10. In his answers, the only seafood he identifies having eaten at the Restaurant on April 14, 2011 was "oysters (believed to be Oysters Rockefeller), as well as possibly scallops and/or another shared appetizer." Id.

Based on these facts, Land & Sea contends that it did not know until the filing of the complaint that the food poisoning was alleged to be the result of shellfish and further claims it still does not know what precise food item from its restaurant, if any, caused Mr. Collier's

---

[5] Land & Sea also contends that it did not learn of Collier's name or identity until June 2011, when it received a letter from Liberty Insurance, who was providing workers' compensation benefits to Collier, see ECF No. 58-2, at 10, and a letter from Collier's attorney, in which he indicated that Collier had suffered injuries as a result of food poisoning on April 14, 2011.

injuries. Thus, Land & Sea argues that, even if notice were not given until the filing of the Third-Party Complaint, that would be "reasonable notice" or it would at least be a fact issue for the jury as to whether that would constitute "reasonable notice" under Section 8.7. Because the Court is allowing additional discovery as to the first alleged notice given, it does not reach this issue at this time.[6]

## IV. CONCLUSION

For these reasons, the Court concludes that the pending summary judgment motions, ECF Nos. 57, 62, should be **DENIED WITHOUT PREJUDICE**. The Clerk of the Court is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

ENTER: This 27th day of January, 2014.

*/s/ James C. Turk*
Senior United States District Judge

---

[6] The Court also does not reach Land & Sea's claim that the negligence claim does not depend on "reasonable notice" and thus that even if no reasonable notice was given, PFG and Sam Rust could still be held liable under a negligence theory. ECF No. 63 at 15 n.*. This argument regarding the continuing viability of the negligence claim was raised by Land & Sea only in a footnote, and was not supported by any authority. Moreover, as Sam Rust points out, the language of Section 8.2-607(3)(a) itself, if applicable, would bar Land & Sea "from any remedy." ECF No. 66 at 9 (quoting Va. Code Ann. § 8.2-607(3)(a). In any event, the Court's determination that summary judgment is currently premature makes it unnecessary to address this argument.