CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 21 2014

JULIA C. DUDLEY, CLERK
BY: /s/ Amcody
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT J. COLLIER,<br>　　Plaintiff,<br><br>v.<br><br>LAND & SEA RESTAURANT CO., LLC<br>d/b/a FRANKIE ROWLAND'S<br>STEAKHOUSE,<br>　　Defendant/Third-Party Plaintiff,<br><br>v.<br><br>PERFORMANCE FOOD GROUP, INC.<br>d/b/a PERFORMANCE FOOD<br>SERVICE-VIRGINIA,<br>　　Third-Party Defendant/<br>　　Crossclaim Plaintiff,<br><br>v.<br><br>SAM RUST SEAFOOD, INC.,<br>　　Third-Party Defendant/<br>　　Crossclaim Defendant/<br>　　Fifth-Party Plaintiff,<br><br>v.<br><br>CADE CODE SHELLFISH<br>& SEAFOOD COMPANY,<br>　　Fifth-Party Defendant/<br>　　Sixth-Party Plaintiff,<br><br>v.<br><br>NORM BLOOM AND SON, LLC,<br>　　Sixth-Party Defendant. | Case No. 7:13-cv-00104<br><br>**MEMORANDUM OPINION**<br><br>Hon. Glen E. Conrad<br>Chief United States District Judge |

Pending before the court is a motion for summary judgment filed by third-party defendant Sam Rust Seafood, Inc. ("Sam Rust"), in which it seeks summary judgment against

Count VII of the second amended third-party complaint. The motion has been fully briefed, the parties argued the motion at a June 12, 2014 hearing, and it is now ripe for disposition.

Plaintiff Robert Collier alleges that he suffered serious injuries as the result of eating "unwholesome food" at Frankie Rowland's Steakhouse on April 14, 2011. In the count at issue here—Count VII—third-party plaintiff Land & Sea Restaurant Company, LLC d/b/a Frankie Rowland's Steakhouse ("Land & Sea") seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Sam Rust is required to defend and indemnify Land & Sea against Collier's claims.

Sam Rust seeks summary judgment on two grounds. Its primary argument is that Land & Sea failed to give it timely and reasonable notice of plaintiff's claim and thus that Sam Rust is under no obligation to either defend the claim or indemnify Land & Sea. Second, Sam Rust argues that it is entitled to summary judgment because neither of Land & Sea's corporate designees was able to identify specifically which product of Sam Rust is supposed to have made the plaintiff ill or to identify any specific defect in that product. ECF No. 102 at 13.

For the reasons discussed below, the court concludes that neither of these arguments entitles Sam Rust to summary judgment. Accordingly, Sam Rust's motion for summary judgment will be denied.

## **Background**

Although this case involves a number of pleadings brought against various parties, and although there have been several opinions already written by the original judge assigned to this case,[1] the motion presently before the court is a straightforward one that involves only a single claim. The court nonetheless will provide some general background first to help orient the reader

---

[1] The case was originally assigned to Senior United States District Judge James C. Turk, but he transferred the case to the undersigned on May 22, 2014 for all further proceedings.

and then turn to more specific facts relevant to the issues raised in the summary judgment motion.

I.  **General Background**

As noted, plaintiff in this case alleges that he suffered damages, including severe bodily damage, due to food poisoning after consuming "unwholesome food," at Frankie Rowland's Steakhouse on April 14, 2011. ECF No. 1 at 1. His original complaint did not identify any specific food item as the cause of his illness, but did make reference to him suffering from "paralytic shellfish poisoning" and stated that he consumed a meal that "included shellfish, among other things." ECF No. 1 at 2. At his March 17, 2014 deposition, plaintiff clarified that in addition to the meal he ordered, which consisted of "[i]ceberg lettuce, salad, steak, a baked potato, asparagus, two Budweiser[s], bread pudding, and a coffee[,]" he also tried some of the appetizers others in his party had ordered. ECF No. 110-1 at 5, Collier Dep. at 56. Specifically, he ate two or three oysters, one or two scallops, and perhaps half a shrimp. Id. In reports dated May 2014, two of plaintiff's experts have now opined that his injuries were caused by his "ingestion of saxitoxin tainted oysters" at Land & Sea. See ECF No. 140 at 18; ECF No. 141 at 12-13.

Land & Sea had several suppliers from which it purchased food, and one of its primary suppliers was Performance Food Group, Inc. ("PFG"). According to the deposition of Jennifer Mika, one of PFG's employees, PFG supplied the oysters, the scallops, and the shrimp to Land & Sea, and PFG bought at least the oysters and scallops from Sam Rust. ECF No. 110-8 at 3-4, Mika Dep. at 54, 102. Additionally, certain shellfish tags obtained by the Virginia Department of Health ("VDH") during its investigation of Land & Sea after Collier became ill, indicate that the oysters served to Collier's table were supplied by Sam Rust. See, e.g., ECF No. 102-1 at 71.

After Collier filed suit against Land & Sea, Land & Sea sued PFG in a third-party complaint. PFG initially brought Sam Rust into the suit by way of a fourth-party complaint, see ECF No. 29. In its fourth-party complaint, PFG alleged both a common law indemnification claim against Sam Rust, as well as a claim for indemnification pursuant to a Foodservice Products Supplier Agreement ("the Agreement") between PFG and Sam Rust, executed in 2009. See ECF No. 110-9. When Land & Sea amended its third-party complaint to add the declaratory judgment count against Sam Rust, it, too, relied on the Agreement's indemnification provision. In pertinent part, the provision states:

> 14. <u>Indemnification: Insurance</u>
> A. <u>Indemnification</u>. Supplier [i.e., Sam Rust] will indemnify, defend, and hold PFG, its affiliates and subsidiaries and their officers, directors, employees and agents, as well as any customers of PFG and its subsidiaries harmless from and against any allegations asserted or damages, liabilities, losses, costs or expenses (including reasonable attorneys' fees) sought in any claim, action, lawsuit or proceeding connected with or arising out of any of the following (collectively, "Claims"):
> . . .
> 2) Death of or injury to any person, damage to any property, or any other damage or loss resulting or claimed to have resulted, in whole or in part, from any quality or other defect in the Product, whether latent or patent, or failure of the Product to comply with any express or implied warranties or any claims of strict liability in tort relating to the Product . . .
> Notwithstanding the foregoing, [Sam Rust] shall not be liable to PFG to the extent PFG's damages are determined to result from PFG's own gross negligence or willful misconduct. [Sam Rust] shall use counsel reasonably satisfactory to PFG in the defense of such Claims. **PFG shall, within thirty (30) days after receipt of notice of a Claim against PFG, notify [Sam Rust] thereof; provided, however, that failure of PFG to provide such notice to [Sam Rust] shall not limit the defense or indemnification obligations, except to the extent that the delay has a material adverse effect upon the ability of [Sam Rust] to defend such Claim.**

ECF No. 110-9, Agreement ¶ 14(A)(2) (emphasis added). The emphasized portion above is

central to the issue of notice raised in the pending motion.

## II. Facts Relating to Notice

Based on the court's rulings herein, the important facts are those that show what PFG knew about Collier's claim and when. On this issue, Sam Rust sets forth in its undisputed statement of facts that PFG "admitted that it received no notice of the offense described in the complaint, or of Collier's alleged injuries, or of any alleged defect in its products, until it was served with [Land & Sea's] Third-Party Complaint against PFG." ECF No. 102 at 6, ¶ 34 (citing ECF No. 102-3 at 5, PFG's response to Sam Rust's requests for admission number 6).

PFG was served with the third-party complaint on May 21, 2013. ECF No. 26. Less than thirty-days later—on June 10, 2013—PFG sent a letter to Sam Rust's president, requesting Sam Rust "to indemnify and hold PFG and Land & Sea harmless for Collier's allegations, including an assumption of the defense(s) of this matter." ECF No. 110-10. Sam Rust rejected this demand. On the same date—June 10, 2013—PFG filed its fourth-party complaint against Sam Rust.

There is also evidence about a casual conversation in April 2011 between Land & Sea's head chef at the time, James D. Nelson III, and PFG's sales representative, Jennifer Mika. Specifically, Nelson testified that at some point after the VDH inspected the Restaurant on April 18, 2011, he called Mika and "told her about the alleged April 14, 2011 food-poisoning incident and VDH's subsequent inspection of the restaurant." ECF No. 110-4 at 4, Nelson Aff. ¶ 11. At his deposition, he did not recall the contents of that conversation precisely, but said he "would have talked to her about there [being] a table that came in and got sick," that "we do not know specifically what caused them to get sick . . .but that . . . [t]he health inspector was coming in to check everything." ECF No. 110-3 at 9, Nelson Dep. at 85. He also believed he "would have said

something about the VDH being concerned with the lobster tank at least" and possibly mentioned shellfish, although he did not recall. Id. at 10-11, Nelson Dep. at 86-87.

To fully understand Sam Rust's arguments, the court also summarizes briefly the (largely undisputed) facts as to what Land & Sea knew and when.[2] As noted, Collier ate at Land & Sea on April 14, 2011. Land & Sea learned on April 15, 2011 that several unidentified diners had become ill after an April 14, 2011 meal and that one was still in the hospital. On April 18, 2011, the VDH conducted a thorough inspection of the Restaurant. Nelson, who was present during the inspection, testified that he got the impression that the VDH inspectors "began to focus on the shell fish" and were very concerned with the lobsters. ECF No. 110-3 at 6-7, Nelson Dep. at 68-69. Nelson has testified, though, that the VDH did not inform him which, if any, of the 25-plus food and drink products served to the table was suspected to be the cause of Collier's alleged food poisoning.[3] ECF No. 110-4 at 4, Nelson Aff. ¶ 7. VDH did not find any defects or deficiencies in the reviewed products, or in their handling, storage, and preparation by Land & Sea, and took no action against Land & Sea. Id. ¶¶ 8, 17; ECF No. 110-7 at 3, McAllister Aff. ¶ 7; ECF No. 110-5 at 3-4, McAllister Dep. at 23-24.

In June 2011, Land & Sea received two letters that related to Collier, one from Collier's counsel and one from his worker's compensation insurance carrier. From these letters, Land & Sea learned that the severely ill diner's identity was Robert Collier. ECF No. 110-7 at 4-5, McAllister Aff. ¶¶ 12-14, 16-18; ECF No. 110-5 at 4, McAllister Dep. at 24. When the complaint was filed on March 19, 2013, Land & Sea received its "first notice that Collier consumed shellfish at [Land & Sea] on April 14, 2011, or that he may have sustained paralytic-

---

[2] Based on the court's rulings, however, the issue of when Land & Sea first knew about Collier's claim does not determine the timeliness of the required notice.

[3] See ECF No. 102-1 at 41 (copy of itemized receipt provided to VDH).

shellfish poisoning or Guillain-Barré syndrome (or one of its variants), or both." ECF No. 110 at 10 (citing ECF No. 110-7, McAllister Aff. ¶ 23). Land & Sea then identified the shellfish products ordered by Collier's table and the suppliers of those products and filed without delay a third-party complaint against PFG. Upon seeing the fourth-party complaint and learning of Sam Rust's defense and indemnity obligations, Land & Sea's counsel sent a letter to Sam Rust dated October 15, 2013, asking it to defend and indemnify Land & Sea. ECF No. 110-11. At the end of January 2014, Land & Sea's counsel received a response from Sam Rust's insurer, rejecting Land & Sea's demand. ECF No. 110-12.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must consider the evidence in the record as a whole, see Ricci v. DeStefano, 557 U.S. 557, 586 (2009), and must draw "all reasonable inferences . . . therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable [fact finder] could return a verdict in his favor. Id. at 249–50. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

As noted, Sam Rust seeks summary judgment in its favor as to Land & Sea's claim against it on two grounds. The first is that Land & Sea allegedly failed to give timely notice of

Collier's claims to Sam Rust. The second is that Land & Sea's representatives are unable to identify any specific defect in any specific product supplied by Sam Rust. The court addresses each in turn.

I. Notice

   A. The Required Notice Is Governed Solely By the Agreement

Sam Rust first contends, relying on Virginia Code Section 8.2-607, that Land & Sea failed to give Sam Rust reasonable and timely notice of the claim against it and that it should be "barred from any remedy" under that statute. See Va. Code Ann. § 8.2-607. Land & Sea counters that any obligation to give notice to Sam Rust is governed solely by the terms of the Agreement, and not by Section 8.2-607. The court concludes that Section 8.2-607 has no relevance to the claim by Land & Sea against Sam Rust.

In pertinent part, Section 8.2-607 provides that, where a tender of goods has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Va. Code Ann. § 8.2-607(3)(a). Comment 4 to that provision elaborates that "[t]he time of notification is to be determined by applying commercial standards to a merchant buyer." Id. cmt. 4. Sam Rust asserts that Land & Sea knew of Collier's claim against it in 2011—years before Sam Rust was ever notified about the claim—and thus that Land & Sea should be "barred from any remedy." Va. Code Ann. § 8.2-607(3)(a).

Notably, however, the claim here is brought pursuant to a written indemnification agreement between Sam Rust and PFG, to which Land & Sea is a third-party beneficiary. As Judge Turk noted in his prior order (in which he dismissed PFG's common law indemnification claims at Sam Rust's urging), "the express indemnification clause . . . governs the

indemnification obligations between [PFG and Sam Rust] and . . . precludes any implied or common law indemnification in this case." ECF No. 52 at 1. The Agreement also sets forth the indemnification obligations owed by Sam Rust to PFG's customers, such as Land & Sea. The related notice requirements are also governed by the Agreement. Accordingly, Section 8.2-607 neither governs nor informs the timeliness of those obligations.[4]

### B. The Agreement Requires Only That PFG Give Notice to Sam Rust

Sam Rust argues, in the alternative, that to the extent the notice obligations are governed by the Agreement between PFG and Sam Rust, Land & Sea's status as a third-party beneficiary of the Agreement means it is bound by the terms of the Agreement, and that Land & Sea was required to give notice to Sam Rust but failed to do so. Land & Sea contends that, under the plain and unambiguous language of the Agreement, the only party that is required to give notice of a claim to Sam Rust is PFG, and that PFG gave timely notice, thereby satisfying any notice obligations of Land & Sea. Again, Land & Sea's argument is persuasive, based on a plain reading of the Agreement.

Significantly, while the Agreement obligates Sam Rust to defend and indemnify "PFG and its customers" against certain claims, it makes no mention of any requirement or obligation for any customer to give notice directly to Sam Rust. Instead, the Agreement references only what notice must be given by PFG. Moreover, the timing of that notice is expressly dependent on when PFG receives notice of the claim, to wit:

---

[4] Land & Sea offers additional reasons why Section 8.2-607 is inapplicable here, including: (1) the statute applies only where a buyer claims breach of warranty, but here Land & Sea is seeking a defense and indemnification; and (2) the statute does not apply where the parties are not in a direct buyer-seller relationship. See ECF No. 110 at 21 (collecting various authority, including Kerr v. Hunter Div., 32 Va. Cir. 497 (Va. Cir. Ct. 1981), holding that § 8.2-607(3)(a)—or its equivalent in other states—does not require a buyer to give a remote seller notice of a breach of warranty as a condition precedent to recovery against that seller). The court does not address these arguments in light of its rulings herein.

> **PFG shall**, within thirty (30) days after receipt of notice of a Claim against PFG, notify [Sam Rust] thereof; provided, however, that failure of PFG to provide such notice to [Sam Rust] shall not limit the defense or indemnification obligations, except to the extent that the delay has a material adverse effect upon the ability of [Sam Rust] to defend such Claim.

ECF No. 110-9, Agreement ¶ 14(A) (emphasis added).

The Agreement plainly and unambiguously sets out the obligations as between Sam Rust and any of PFG's customers, such as Land & Sea. While it obligates Sam Rust to indemnify and defend PFG and "any customers of PFG," it does not require any notice by those customers, only by PFG. The court may not—and will not—read such an obligation into the Agreement where the parties could have included one and chose not to. See Landmark HHH, LLC v. Gi Hwa Park, 671 S.E.2d 143, 147 (Va. 2009) (court interpreting contract under Virginia law must "construe it as written and will not add terms the parties themselves did not include"); PBM Nutritionals, LLC v. Lexington Ins. Co., 724 S.E.2d 707, 714 (Va. 2012) (same).

Additionally, the term "PFG" in the foregoing quotation from the Agreement cannot be read to include collectively PFG's affiliates or its customers, such as Land & Sea. This is so because in nearby paragraphs of the Agreement, there are repeated references to "PFG and its affiliates[,]" to "PFG or its customers[,]" and to "PFG or a PFG customer." See ECF No. 110-9, Agreement ¶¶ 13B, 14B. These references reinforce that when the parties intended something to refer to PFG and other entities, they understood how to turn the phrase. By contrast, since the notice provision refers only to PFG, it can only be read to mean PFG and not its customers or affiliates. See Smith Barney, Inc. v. Critical Health Sys., 212 F.3d 858, 861 (4th Cir. 2000) (applying, in contract case, expressio unius est exclusio alterius, or principle that where particular language appears in one section, but is omitted in another, that omission should be deemed intentional); cf. Clark v. Absolute Collection Serv., Inc., 741 F.3d 487, 491 (4th Cir.

2014) (describing principle in statutory context). Thus, the court will not construe it to impose an obligation on PFG's customers, as well.

As noted by Land & Sea, moreover, it is understandable that the parties to the Agreement decided not to require notice directly from a PFG customer to Sam Rust. Since a PFG customer typically would not even know about the Agreement's existence, let alone the specifics of any notice provisions related to defense and indemnity obligations, it is sensible to not impose any notice obligation on a customer.

Sam Rust argues, however, that the court's interpretation of the Agreement would allow Land & Sea to give no notice at all to Sam Rust, try the "plaintiff's claim to . . . verdict, suffer a multimillion dollar verdict and then claim defense costs and indemnity against Sam Rust." ECF No. 117 at 5. As long as PFG had not received notice more than thirty days before Land & Sea sought indemnification, Sam Rust would be obligated to pay those costs and indemnify Land & Sea. Sam Rust argues that such a result would be contrary to Virginia law and "absurd." See id.

Sam Rust's argument on this point is untenable. The factual scenario presented by Sam Rust is not what is present here. Here, Land & Sea gave notice to PFG, who, in turn, gave timely notice to Sam Rust. Land & Sea also gave direct notice to Sam Rust, and Sam Rust has participated fully in this lawsuit.

In any event, Sam Rust's hypothetical scenario not only ignores PFG's position in the parties' relationship, but is also a possible result only if the hypothetical party in Land & Sea's position utilizes an enormously risky litigation strategy. Assuming, as in the instant case, that Land & Sea's hypothetical counterpart had no contractual notice obligation to the hypothetical party in PFG's position, then Land & Sea's hypothetical counterpart would owe a notice obligation to PFG's counterpart under the common law, as codified under the Virginia statute.

Even if Land & Sea's counterpart knew about an indemnification provision between its supplier and Sam Rust's counterpart like the one here, no prudent party in Land & Sea's position would fail to give notice to its supplier counterpart. Of course, once that notice obligation accrued, PFG's counterpart would be contractually required to give notice to Sam Rust. Stated simply, the hypothetical scenario proposed by Sam Rust is so unlikely to occur as to render Sam Rust's argument legally insignificant. Moreover, to the extent that there is any potential for an "absurd result," it exists only because of shortcomings in the notice provisions of Sam Rust's indemnification agreement with PFG.

In its reply memorandum, Sam Rust also disputes Land & Sea's arguments on the ground that they are all based on the "false" premise that the Restaurant is a remote buyer not in privity with Sam Rust. Sam Rust argues this premise is false because Land & Sea is a third-party beneficiary of the Agreement between PFG and Sam Rust and, as such, Land & Sea's claims "are subject to all of the defenses that Sam Rust may have had against PFG, the other party to the contract." ECF No. 117 at 2. Sam Rust relies on Virginia Code Ann. § 55-22 and the authority cited in State Farm Fire & Casualty Company v. Nationwide Mutual Insurance Company, 596 F. Supp. 2d 940, 946-47 (E.D. Va. 2009). These sources underscore the general legal propositions that a third-party beneficiary is "bound by the terms of the contract, and subject to defenses arising out of the contract" and that "a third-party beneficiary's rights are subject to 'all express or implied conditions affecting the promise in which he is interested.'" Id. (citations omitted). Based on this law, and the fact that Land & Sea makes no contention that it directly notified Sam Rust at all except via the filing of its own lawsuit against Sam Rust, Sam Rust contends that Land & Sea may not maintain its claims against Sam Rust because it did not provide notice to Sam Rust in a timely fashion.

Sam Rust—again—ignores the plain language of the Agreement itself. While the indemnity provision expressly confers a benefit on PFG's customers, it imposes no notice obligations at all on those customers; the provision only imposes such an obligation on PFG. Thus, Land & Sea, as a third-party beneficiary, is indeed bound by the terms of the notice provision, but those terms require only that PFG give notice. The parties certainly could have imposed such an obligation on a third-party beneficiary, but they chose not to do so. The obligation will not be imposed by the court here. See Landmark HHH, LLC, 671 S.E.2d at 147.

### C. The Notice Given By PFG Was Sufficient, Under the Agreement, to Trigger Sam Rust's Duty to Defend And Indemnify Land & Sea

Having determined that the express and unambiguous terms of the Agreement govern the notice obligations here, it is plain that the only notice required is that "PFG shall, within thirty (30) days after receipt of notice of a Claim against PFG, notify [Sam Rust] thereof . . . ." ECF No. 110-9, Agreement ¶ 14(A).

Here, PFG received notice of Collier's claim when it was served with the third-party complaint by Land & Sea on May 21, 2013. ECF No. 26. Within the thirty days set forth in the Agreement—on June 10, 2013—PFG sent a letter to Sam Rust's president, requesting Sam Rust "to indemnify and hold PFG and Land & Sea harmless for Collier's allegations, including an assumption of the defense(s) of this matter." ECF No. 110-10. Additionally, PFG filed its fourth-party complaint (later re-filed as a crossclaim) against Sam Rust on the same date. Thus, the court easily concludes that PFG gave timely notice to Sam Rust—the only notice required by the Agreement—and that Sam Rust is thus obligated to defend and indemnify PFG and Land & Sea against Collier's claims.

To the extent that Sam Rust suggests that PFG had notice of the Claim earlier, when Nelson told PFG's Mika that a diner had become ill and there had been an inspection, the court

disagrees. In some circumstances, or under slightly different facts, it might be a question of fact as to whether or not this conversation constituted notice to PFG. In this case, however, it is obvious that the conversation between Mika and Nelson did not, as a matter of law, constitute "notice of a Claim" as defined in the Agreement. See ECF No. 110-9, Agreement ¶ 14A.

Significantly, both parties to that conversation are clear that they were not aware that any product supplied by Sam Rust was accused, or that Collier was claiming a product supplied by Sam Rust made him ill. Furthermore, the very general knowledge that a diner became severely ill after eating at a restaurant cannot constitute notice of a Claim as defined in the Agreement, which is "any claim, action, lawsuit or proceeding connected with or arising out of" a claimed defect in a Sam Rust product. See ECF No. 110-9, Agreement ¶ 14(A). Indeed, it was not until long after this litigation was filed that plaintiff finally identified which product he believes caused his injuries.

For all these reasons, the court concludes Sam Rust is not entitled to summary judgment due to a lack of notice.

## II. Failure to Identify Any Specific Product or Any Defect

As a second ground for summary judgment, Sam Rust argues briefly that because neither of Land & Sea's corporate designees was able to identify specifically the product that is supposed to have made Collier ill, or any defect in that product, Land & Sea's claim also fails on its merits. Land & Sea counters that Sam Rust's argument ignores the clear and unambiguous provisions of the Agreement, which trigger Sam Rust's indemnification and defense obligations as to "any claim, action, lawsuit or proceeding connected with or arising out of . . . injury to any person . . . resulting or **claimed to have resulted**, in whole or in part, from" Sam Rust's

14

Case 7:13-cv-00104-GEC-RSB   Document 171   Filed 07/21/14   Page 14 of 15   Pageid#: 1734

products. ECF No. 110, Ex. 9, Agreement ¶ 14 (A)(2) (emphasis added). The court believes Land & Sea has the more persuasive argument on this issue.

Here, Collier is claiming his injuries arose from shellfish. It is undisputed that the only shellfish he consumed were supplied by PFG, who purchased them from Sam Rust. It is not fatal to its claims that Land & Sea's corporate representatives, during their depositions, were unable to identify exactly which products may have harmed Collier or the exact nature of the claimed defect. It is sufficient that Collier has alleged injuries "claimed to have resulted" from Sam Rust's products. See id. Thus, Sam Rust's motion for summary judgment on this ground will be denied.

## Conclusion

For the foregoing reasons, Sam Rust's motion for summary judgment, ECF No. 101, will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 21st day of July, 2014.

*[signature]*
_____
Chief United States District Judge

15
Case 7:13-cv-00104-GEC-RSB    Document 171    Filed 07/21/14    Page 15 of 15    Pageid#: 1735