CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 15 2014
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT J. COLLIER,<br>　　Plaintiff,<br><br>v.<br><br>LAND & SEA RESTAURANT CO., LLC<br>d/b/a FRANKIE ROWLAND'S<br>STEAKHOUSE,<br>　　Defendant/Third-Party Plaintiff,<br><br>v.<br><br>PERFORMANCE FOOD GROUP, INC.<br>d/b/a PERFORMANCE FOOD<br>SERVICE-VIRGINIA,<br>　　Third-Party Defendant/<br>　　Crossclaim Plaintiff,<br><br>v.<br><br>SAM RUST SEAFOOD, INC.,<br>　　Third-Party Defendant/<br>　　Crossclaim Defendant/<br>　　Fifth-Party Plaintiff,<br><br>v.<br><br>CAPE COD SHELLFISH<br>& SEAFOOD COMPANY,<br>　　Fifth-Party Defendant/<br>　　Sixth-Party Plaintiff,<br><br>v.<br><br>NORM BLOOM AND SON, LLC,<br>　　Sixth-Party Defendant. | Case No. 7:13-cv-00104<br><br>**MEMORANDUM OPINION**<br><br>Hon. Glen E. Conrad<br>Chief United States District Judge |

　　Pending before the court is a motion to dismiss filed by sixth-party defendant Norm

Bloom and Son, LLC ("Norm Bloom"). In its motion, Norm Bloom seeks dismissal of the sixth-

party complaint against it on the ground that this court does not have personal jurisdiction over it. Norm Bloom claims that it is entitled to dismissal under both Fed. R. Civ. P. 12(b)(2), due to lack of personal jurisdiction, and Rule 12(b)(5), for insufficiency of service of process "because service through the Secretary of the Commonwealth was improper on the ground that no personal jurisdiction over Norm Bloom existed." Dkt. No. 144 at 2.

The motion has been fully briefed, the court has heard arguments, and it is now ripe for disposition. For the reasons set forth herein, the court concludes that it has personal jurisdiction over Norm Bloom and thus the motion to dismiss will be denied.

## Background

The court has already issued a number of opinions in this case, and many of them discuss the factual background of the matter in some detail. For purposes of the instant motion, a broad overview of that background will suffice. The plaintiff in this case, Robert Collier, alleges that he suffered damages, including severe bodily damage, due to eating oysters contaminated with saxitoxin at Frankie Rowland's Steakhouse in Roanoke, Virginia on April 14, 2011. Dkt. No. 1 at 1. Various parties in the chain of supply of the oysters are named as third-party defendants in the case. According to the allegations in the third-party complaints, the oysters at issue were supplied to the restaurant by Performance Food Service-Virginia ("PFG"). PFG's supplier, in turn was Sam Rust Seafood, Inc. ("Sam Rust"), which purchased the oysters from Cape Cod Shellfish & Seafood Company ("Cape Cod"), which obtained them from Norm Bloom.

Norm Bloom alleges that this court's exercise of personal jurisdiction over it would violate its due process rights because Norm Bloom lacks sufficient contacts with the Commonwealth of Virginia. Norm Bloom sets forth the following facts via affidavit and contends they establish the limited nature of its contacts with Virginia:

- Norm Bloom is a Connecticut limited liability company with a place of business in Norwalk, Connecticut. It harvests shellfish from the waters off the coast of Connecticut;

- Norm Bloom does not have offices in Virginia, does not own property in Virginia, and does not maintain any bank accounts in Virginia;

- Norm Bloom has a general website where people can order products and shellfish online, but does not advertise or market the sale of shellfish specifically in Virginia;

- Norm Bloom has no telephone listings or mailing addresses in Virginia, is not registered to do business here, and does not have an agent for service of process here;

- No employees or members of Norm Bloom are domiciled in Virginia;

- Norm Bloom has never had any direct contact with Frankie Rowland's; and

- Norm Bloom did not sell shellfish to Cape Cod (a Massachusetts company) in Virginia and Norm Bloom was not aware that Cape Cod was re-selling shellfish to suppliers (here to Sam Rust, which sold to PFG, which sold to the restaurant in Virginia);

See Dkt. No. 145-1 at 1-2 (affidavit of Norman C. Bloom).

Norm Bloom also underscores that it is currently defending a suit brought by Collier alleging the same injuries as the instant lawsuit, which is pending in a Connecticut state court.[1] Norm Bloom complains that it would be unfair and unduly burdensome to require it to defend two lawsuits arising from the same incident. Dkt. No. 145 at 3. It also points out the possibility of inconsistent or conflicting verdicts as a result of two suits concerning the same subject matter. Id.

In response, and in support of its argument that the assertion of jurisdiction over Norm Bloom is permissible, Cape Cod points to the following facts:

- Norm Bloom is an "Interstate Certified Shellfish Shipper" and is well aware that the oysters it sells will be transported across state lines;

---

[1] Specifically, approximately one year after filing this suit, Collier filed action number FST-CV-14-6021686-S, pending before the Connecticut Superior Court for the Judicial District of Stamford/Norwalk at Stamford. See Dkt. No. 145 at 3. That lawsuit names as defendants Norm Bloom, Cape Cod, PFG, and Sam Rust. Id. Thus, the parties to the two suits are identical, except that the restaurant is not named in the Connecticut suit.

- Norm Bloom knew it was selling to Cape Cod. Cape Cod is a seafood wholesaler who advertises being "centrally located for freight truck distribution and . . . . minutes away from Boston's Logan International Airport for overnight air shipments." Based on this, Norm Bloom had knowledge its oysters might end up in Virginia and that its indemnification obligations could extend to an injury in that forum;

- Norm Bloom maintains and operates a website that allows anyone (including Virginia residents) to order food items. During a five year period spanning the date at issue—between June 1, 2009 and June 1, 2014—Norm Bloom received 32 website orders from individuals in Virginia, constituting approximately 7.34 percent of its website business during that period. Norm Bloom charged for shipping on these orders and made arrangements to have the orders shipped to Virginia;

- On at least 36 occasions between January 5, 2011 and January 3, 2013, Norm Bloom sold shellfish to Bevans Oyster Company, a seafood wholesaler incorporated and headquartered in Virginia. These sales totaled more than $790,000 and involved over 25,000 bushels of oysters, with approximately 200 oysters per bushel;[2] and

- Oysters from Norm Bloom also are sold via the secondary market, such as the allegedly tainted oysters here. For example, Norm Bloom sells to Westport Agriculture, which in turn sells the shellfish to Whole Foods, a grocery store with ten Virginia locations.

See Dkt. No. 178 at Exhibits C, D, E, F, G, and H.

## Discussion

The plaintiff, i.e., Cape Cod, bears the burden of establishing that the court has jurisdiction over the defendant by a preponderance of the evidence. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1,[3] extends

---

[2] As to the Bevans sales, Norm Bloom counters that it did not ship these oysters to Bevans in Virginia. Rather, Bevans came to Connecticut with a refrigerated truck and would purchase the oysters (usually during the winter months) and take them back to Virginia. Dkt. No. 179-1 at 2.

[3] The long-arm statute lists a number of bases for the exercise of personal jurisdiction in Virginia. In pertinent part, it provides:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> . . .
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;
>
> 5. Causing injury in this Commonwealth to any person by breach of warranty

personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990). Thus, the court's inquiry is limited to a determination of whether it violates due process to require Norm Bloom to appear and defend in this forum. See Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996) (cited in Sky Cable, LLC v. Coley, No. 5:11cv48, 2013 WL 3517337, *16 (W.D. Va. July 11, 2013)). This requires that the defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted).

There are two possible avenues to obtain personal jurisdiction over a defendant: general jurisdiction and specific jurisdiction. The parties here disagree about the existence of both, with Norm Bloom asserting it is not subject to jurisdiction under either and Cape Cod alleging the court could exercise both specific and general jurisdiction.

## I.   General Jurisdiction

Because the court concludes specific jurisdiction may be asserted here, it is not necessary to address in detail Cape Cod's argument that this court could assert general jurisdiction over Norm Bloom. Nonetheless, the court will explain briefly why it does not have general jurisdiction over Norm Bloom.

---

> expressly or impliedly made in the sale of goods outside this Commonwealth when he might reasonably have expected such person to use, consume, or be affected by the goods in this Commonwealth, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;
>
> . . .
>
> C. When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him . . . .

Va. Code Ann. § 8.01-328.1.

General personal jurisdiction is "all-purpose" jurisdiction such that an individual or entity can be hauled into a state's court even when its affiliations with the state did not give rise to the conduct at issue. Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014). The Supreme Court's recent decision in Daimler sets forth the relevant standards for evaluating a claim of general personal jurisdiction. In short, general jurisdiction requires not just "continuous and systematic" contacts (the words used in Int'l Shoe to refer to specific jurisdiction), but instead requires that "the continuous corporate operations within a state [be] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." Daimler, 134 S. Ct. at 761 (citing Int'l Shoe, 326 U.S. at 318.) To justify general personal jurisdiction, the corporation's affiliations with the state must be "so continuous and systematic as to render it essentially at home in the forum state." Id. (citation omitted).

Norm Bloom's direct contacts with Virginia include its website sales and sales to Bevans. It also has indirect contacts with Virginia in that it sells to suppliers, and those suppliers (or their distribution chains) sell Norm Bloom's products in Virginia. Sales through a website alone are insufficient to confer general jurisdiction if that website is focused generally on customers located throughout the United States and does not focus on or target customers in the forum state. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 401 (4th Cir. 2003). Based on the information provided to the court, the website here falls within that category. That is, it allows customers located anywhere to purchase Norm Bloom's products through the website, but does not focus specifically on Virginia as a target market.

As to the sales to Bevans, the record contains evidence of the volume of those sales (about $800,000 over a two-year period that includes that date of alleged injury here), but not about the percentage of Norm Bloom's business that the Bevans sales constitute. Nonetheless,

based on the record before it, the court finds general jurisdiction does not exist based on the Bevans sales, the website sales, and the sales through other chains of distribution that ultimately land Norm Bloom's products in Virginia. Post-Daimler, it is clear that general jurisdiction over a non-resident corporate defendant who has no offices or other strong connections to the forum, is permitted only in the "exceptional" case. Daimler, 134 S. Ct. at 761 n.19 (declining to "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."). This case is not such an "exceptional" case and the court concludes that the assertion of general jurisdiction over Norm Bloom is not permitted.

## II. Specific Jurisdiction

Specific jurisdiction requires that the defendant's relevant conduct (here the sale of oysters) has "such a connection with the forum state that it is fair for the defendant to defend itself in that state." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (citations omitted). In determining whether due process allows the assertion of specific jurisdiction, the United States Court of Appeals for the Fourth Circuit typically directs a three-pronged approach, the second and third prongs being reached only if each preceding prong is satisfied:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278-79 (4th Cir. 2009) (citation omitted).

## A. Stream of Commerce Jurisdiction

The Supreme Court has also recognized an alternative to the specific jurisdiction test set forth above, which may be used in cases where a defendant placed its product in the stream of commerce and that product allegedly injured someone in another forum.[4] The Supreme Court's jurisprudence on the so-called "stream of commerce" theory, however, has been less than clear. See Windsor v. Spinner Indus. Co., 825 F. Supp. 2d 632, 635-36 (D. Md. 2011) ("Divining the precise contours of the ["stream of commerce" doctrine] . . . has confounded and divided state and federal courts, including the Supreme Court itself, for many years.") (citations omitted).

The stream of commerce test was first endorsed by the Supreme Court in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Seven years later, in Asahi Metal Indus. Co. v. Superior Court of Cal., the Supreme Court attempted to refine the test's parameters. 480 U.S. 102 (1987) (plurality opinion). In Asahi, all the justices agreed that jurisdiction did not exist, but they split into two primary camps of four justices each as to the proper analysis to reach that result.[5] Justice Brennan and three others reasoned that a defendant who placed a product into the stream of commerce knowing that it would benefit economically from sales of the product in the forum state, had sufficient contacts with the forum state to justify specific jurisdiction. 480 U.S. at 117 (Brennan, J., concurring). Justice O'Connor authored the plurality opinion, joined by three others, concluding that mere foreseeability was not enough and that, instead, a defendant must engage in additional conduct "indicat[ing] an intent or purpose to serve

---

[4] Cape Cod argues that this case is analogous to cases involving automobile insurance because it involves implied indemnity claims. Dkt. No. 178 at 3-4. The court is not persuaded by this argument and, in particular, finds that Cape Cod's reliance on Rossman v. State Farm Mut. Auto Ins. Co., 832 F.2d 282 (4th Cir. 1987) is misplaced, for the basic reasons set forth in Norm Bloom's reply. See Dkt. No. 179 at 5-6. In any event, the "stream of commerce" test is based on similar principles and the court concludes it provides the proper analytical framework here.

[5] Justice Stevens, the ninth justice, also wrote a separate concurrence, which was joined by two of the justices who had also joined Justice Brennan's opinion.

the market in the forum State" to establish minimum contacts. Id. at 112 (plurality opinion). According to Justice O'Connor's opinion, such additional conduct directed toward the forum could include "designing the product for the market in the forum, advertising in the forum . . . establishing channels for providing regular advice to customers in the forum, . . . or marketing the product through a distributor who has agreed to serve as the sales agent in the forum . . . ." Id.

The Supreme Court revisited the stream of commerce theory more recently—in J. McIntyre Mach. Ltd. v. Nicastro, 131 S. Ct. 2780 (2011) ("McIntyre"),—but again, no opinion commanded a majority. In McIntyre, the plurality held that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." Id. at 2788 (plurality opinion). The McIntyre Court concluded that the defendant, an English company who marketed to the U.S. market as a whole, but whose only contact with New Jersey was the sale of one machine through an intermediary, did not purposefully target the New Jersey market and thus was not subject to jurisdiction in New Jersey. Id. at 2790.

The Fourth Circuit had occasion to address Asahi in Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939 (4th Cir. 1994). The Lesnick Court adopted O'Connor's opinion from Asahi, stating that "the touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." 35 F.3d at 945. Thus, it is not enough that a product is delivered into the stream of commerce with the expectation that the product will be purchased in the forum state; due process also requires some additional conduct by the defendant directed toward the forum state. See id.

In Lesnick, the plaintiff alleged her husband had died from smoking Kent brand

cigarettes, which for some of the years he smoked, were manufactured by Lorillard using asbestos-containing micronite filters. Id. at 940. The filter medium was manufactured by defendant Hollingsworth & Vose ("Hollingsworth"), which was the party challenging the assertion of personal jurisdiction over it in Maryland. Id. Lorillard was a New York corporation with principal place of business in New York and it manufactured cigarettes—and incorporated the Hollingsworth filters into them—in Kentucky and New Jersey. Id. at 940, 946. Hollingsworth was a Massachusetts corporation with its principal place of business in Massachusetts. Id. at 940. It acknowledged that it placed its filters in commerce and did so with the knowledge that Kent cigarettes manufactured with the filters (in Kentucky and New Jersey) would be sold in Maryland. Id. at 946. The Fourth Circuit concluded that this knowledge was insufficient to establish specific personal jurisdiction over Hollingsworth. Id. at 946-47. In particular, although there was conduct by Hollingsworth directed toward Lorillard (who itself had contacts with Maryland) and evidence that the two entities worked closely together, there was no evidence of additional conduct by Hollingsworth directed at Maryland. Id.

Despite the lack of definitive guidance from the Supreme Court, most post-McIntyre decisions from lower courts in the Fourth Circuit have concluded (based on Asahi, McIntyre, and Lesnick or some combination of the three) that the Fourth Circuit essentially follows the "foreseeability plus" or "stream-of-commerce plus" test, as set forth in Asahi. See, e.g., Windsor, 825 F. Supp. 2d at 638-39; Smith v. Teledyne Cont'l Motors, Inc., 840 F. Supp. 2d 927, 931-32 (D.S.C. 2012); see also Jones v. Boto Co., Ltd., 498 F. Supp. 2d 822, 829-30 (E.D. Va. 2007) (in pre-McIntyre case, concluding that where it was foreseeable to the defendant that a substantial number of its products would ultimately be purchased by consumers in Virginia and where it maintained a website making "available information and service to consumers in Virginia and

throughout the United States," plaintiffs had shown a "substantial connection with Virginia by actions purposefully directed toward it"). Under this test, specific jurisdiction exists where: (1) it was foreseeable to the defendant that, by placing its product in the stream of commerce, it would be sold in the forum state; and (2) the defendant engaged in some additional conduct directed toward the forum state, designed to purposefully avail itself of the forum state's market. See Asahi, 480 U.S. at 112 (plurality opinion); Lesnick, 35 F.3d at 945-46 (test to be applied is "whether the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state").

### B. Application of the Stream of Commerce Test to Norm Bloom

Turning now to the case at bar, the court first addresses Norm Bloom's argument that there can be no specific jurisdiction in this case at all because the claims do not "arise out of" Norm Bloom's activities directed at Virginia. See Consulting Eng'rs Corp., 561 F.3d at 278-79. That is, Norm Bloom contends the claims against it are "common law indemnification and contribution claims that are based on a sale that took place in Connecticut or Massachusetts" and thus "cannot serve as a basis of specific personal jurisdiction" in Virginia. Dkt. No. 179 at 3. This argument is premised on an overly rigid interpretation of the law of specific jurisdiction.

The indemnification and contribution claims in the Sixth-Party Complaint against Norm Bloom are based entirely on Collier ingesting the oysters in Virginia and suffering damages in Virginia. The fact that they are claims for indemnification instead of a direct product liability claim does not foreclose the specific jurisdiction avenue. Indeed, in Asahi itself, the claim was an indemnification claim by a Chinese tire company against Asahi, the Taiwanese company that had manufactured an allegedly defective tire valve assembly and sold it to the Chinese company

11

outside the United States. 480 U.S. at 105-06. Like the indemnification claim here, the indemnification claim in Asahi was brought as part of the underlying lawsuit, which was a products liability action (there, arising from an accident in California where the plaintiff sustained injuries). Id. Although the plurality opinion in Asahi ultimately found jurisdiction lacking due to a lack of purposeful availment by Asahi, it did not question that the stream of commerce theory of specific jurisdiction was the proper analysis. The same analysis is proper here.

At the hearing on its motion to dismiss, Norm Bloom's counsel made the related argument that specific jurisdiction is not appropriate because the specific oysters that allegedly harmed Collier were not sold to Bevans, or through any direct contact between Norm Bloom and Virginia. Instead, they were sold to a foreign distributor (Cape Cod, a Massachusetts corporation) in a foreign forum and then sold through two other distributors (Sam Rust and PFG) to reach Frankie Rowland's and, ultimately, Collier. Norm Bloom's counsel suggested that specific jurisdiction might be a proper avenue for analysis had the oysters at issue come from direct sales to a Virginia corporation (such as Bevans) or to the restaurant through Norm Bloom's website, since the oysters would have been in Virginia as a direct result of Norm Bloom's contacts with Virginia. Because the oysters at issue came through Cape Cod and then Sam Rust and PFG, however, Norm Bloom contends that the claims do not arise out of any contact it had with the forum. Again, this argument cuts too narrowly.

Cape Cod need not prove that the *specific* oysters that Collier alleges injured him were in Virginia by virtue of Norm Bloom's direct contacts with Virginia; rather, if the sale of a product "arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those

12

States if its allegedly defective merchandise has there been the source of injury . . ." World-Wide Volkswagen, 444 U.S. at 297. See also Jeffers v. Wal-Mart Stores, Inc., 152 F. Supp. 2d 913, 917-18 (S.D.W.V. 2001) (where the defendant's conduct giving rise to the claims was manufacturing and/or supplying a defective bottle, and that bottle was physically present in West Virginia when it allegedly caused the plaintiff's injuries, there was a sufficient nexus between the defendant's conduct and the forum to analyze the issue as one of specific jurisdiction, although the court ultimately concluded that the defendant's contacts with the forum were insufficient to establish purposeful availment). The Court in Jeffers "easily distinguished" the case before it from other cases where specific jurisdiction was found to be inappropriate because in those other cases, the injury did not occur in the forum state, or the allegedly defective product was not sold at all in the forum state, or the causes of action did not arise in the forum state. 152 F. Supp. 2d at 918. Here, as in Jeffers, the injury occurred in the forum state and the product that allegedly caused the injuries was sold to the injured party in the forum state. See also Matthews v. Brookstone Stores, Inc., 469 F. Supp. 2d 1056, 1064 (S.D. Ala. 2007) (where plaintiff was suing based on an allegedly defective air purifier placed into the stream of commerce by defendant outside of Georgia and purchased by plaintiff in Georgia, specific jurisdiction might be appropriate in Georgia, but could not be asserted in Alabama, because there was no sufficient nexus between the product and the forum).

In this case, it is true that Norm Bloom's allegedly defective product was sold to Cape Cod outside of Virginia. But it was placed in the stream of commerce and made its way to Virginia to a person who suffered injuries in Virginia, and the indemnification that Cape Cod seeks arises as a result of those alleged injuries. This is sufficient to examine jurisdiction here using specific jurisdiction principles.

Applying the stream of commerce theory to the facts of this case, there is no dispute that Norm Bloom regularly placed its oysters into the stream of commerce and that its oysters were purchased and eaten by Collier in Virginia. The court also easily concludes that it was foreseeable to Norm Bloom that some of its oysters would be purchased and consumed in Virginia, and thus foreseeable it might be haled into court here. The facts as set forth by Cape Cod, see supra at 3-4, support such a conclusion concerning foreseeability. In particular, given both its website sales and its numerous sales directly to Bevans, a Virginia corporation, Norm Bloom knew its oysters were being taken into Virginia. So, the foreseeability component is clearly satisfied.

The more difficult question to resolve is whether Norm Bloom engaged in activity directed at Virginia so as to constitute purposeful availment of the benefits of the Commonwealth. After careful consideration, the court concludes that the record shows sufficient purposeful activity directed toward Virginia to satisfy this element.

Norm Bloom has made large sales directly to at least one Virginia corporation (Bevans) on at least thirty-six occasions in two years around the time of the injuries here. Additionally, more than seven percent of its website-based sales over a five-year period have been to Virginia customers or residents. Taken together, the court concludes that these two actions—both of which resulted in the sale of its products directly to Virginia residents (both individual and corporate), are sufficient to show purposeful availment of the Virginia market.

As to the Bevans sales, this case involves substantially more contacts with the forum state than in some stream of commerce cases where the forum contacts were found to be insufficient. For example, in AESP, Inc. v. Signamax, LLC, the Court concluded that a Virginia court could not exercise specific jurisdiction over the defendant, whose products allegedly infringed the

plaintiff's copyright and trademark rights, where the defendant made four sales to a Pennsylvania corporation, who resold those products to two customers in Virginia. No. 1:13-cv-1089, 2014 WL 3348134, at *5 (E.D. Va. July 8, 2014). The Court noted that the record there showed that defendant did not direct the sales of its products to Virginia or any Virginia customers, nor did it require the Pennsylvania corporation to sell the products to Virginia customers. There also was no evidence that defendant marketed the allegedly infringing products in Virginia or advertised in Virginia. Id.; see also Lesnick, 35 F.3d at 946-47 (no purposeful availment where a product is placed in the stream of commerce and ends up in the forum state, but there is no additional conduct by the defendant at all directed toward the forum). In this case, however, Norm Bloom availed itself of the Virginia market, both directly through its web-based sales (Virginia sales comprising more than seven percent of such sales over a five-year period) and directly through sales to Virginia corporations, most notably Bevans Oyster Company.

As to Norm Bloom's website sales, the Fourth Circuit has adopted a model to analyze such contacts that was originally set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997). ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713-714 (4th Cir. 2002). Under that model, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id. at 713 (quoting Zippo, 952 F. Supp. at 1124).

To determine when a defendant's electronic contacts with a State are sufficiently purposeful, the quality of those contacts is measured on a "sliding scale":

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the

15

> Internet, personal jurisdiction is proper. At the opposite end are
> situations where a defendant has simply posted information on an
> Internet Web site which is accessible to users in foreign
> jurisdictions. A passive Web site that does little more than make
> information available to those who are interested in it is not
> grounds for the exercise [of] personal jurisdiction. The middle
> ground is occupied by interactive Web sites where a user can
> exchange information with the host computer. In these cases, the
> exercise of jurisdiction is determined by examining the level of
> interactivity and commercial nature of the exchange of information
> that occurs on the Web site."

Id. at 713-714 (quoting Zippo, 952 F. Supp. at 1124). In sum, specific jurisdiction can be exercised, consistent with due process, "over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." Id. at 714.

As applied here, Norm Bloom's website clearly is not at the passive end of the Zippo sliding scale—it actually allows orders to be placed by customers, and Norm Bloom conducts sales transactions through it. It thus allows users to interact with it. Even if Norm Bloom did not specifically target Virginia customers (as opposed to customers in other states), Norm Bloom in fact sold to a number of Virginia customers and thus purposefully availed itself of the privilege of selling its products in Virginia, including shipping those products directly to Virginia. See ALS, 293 F.3d at 713-14.[6] This, especially coupled with actual significant sales to Bevans, a Virginia distributor, demonstrates purposeful availment of Virginia's market. See generally Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 299-300 (3d Cir. 1985) (describing "stream of

---

[6] But see ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (no jurisdiction in South Carolina over defendant whose activities were focused "more generally on customers located throughout the United States without focusing on and targeting South Carolina" and where there were no sales made in South Carolina); Shamsuddin v. Vitamin Research Prods., 346 F. Supp. 2d 804, 815 (D. Md. 2004) (company's "decision to sell its products over the Internet . . . alone cannot demonstrate that [it] took actions purposefully directed toward Maryland specifically").

commerce cases in which the manufacturers involved had made deliberate decisions to market their products in the forum state"), cited in Asahi, 480 U.S. at 111.[7] For all these reasons, the court determines that there are sufficient minimum contacts to justify the assertion of jurisdiction.

The court thus turns to the final prong of the analysis, i.e., whether the exercise of jurisdiction over Norm Bloom comports with notions of "fair play and substantial justice" such that it is constitutionally reasonable. Lesnick, 35 F.3d at 946. This determination is based on the following five factors: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. Id.; Consulting Eng'rs Corp., 561 F.3d at 279.

The court has considered these factors and concludes that it can exercise jurisdiction here consistent with "fair play and substantial justice." Cf. Lesnick, 35 F.3d at 946. There is certainly a burden imposed on Norm Bloom to defend here, several hundred miles from its home, but the court concludes that burden is not so great as to offend the notions of fair play. On this point, it is worth noting that in addition to its direct contacts with Virginia through its website and sales to Bevans, Norm Bloom sells to a number of other distributors who sell its oysters and other

---

[7] The court does not consider as part of Norm Bloom's purposeful availment its sales to other non-Virginia companies who, in turn, sell to established Virginia retailers (such as through Westport to Whole Foods). There is no evidence in the record that Norm Bloom uses or directs those sellers to distribute its product specifically in Virginia; thus, those sales are not purposeful conduct by Norm Bloom directed at the forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (specific jurisdiction is proper where the "contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State; thus, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State") (emphasis in original). Those sales may be relevant, however, to whether Norm Bloom had knowledge that its products were being sold in Virginia and whether it is reasonable to require it to defend itself in Virginia courts.

seafood in Virginia. This includes selling to a distributor who sells directly to a retailer (Whole Foods) with ten retail locations in Virginia. Norm Bloom should not be surprised—at all—that its products were consumed in Virginia and that it might be sued here. Cf. Jones, 498 F. Supp. 2d at 831 (considering defendant's substantial sales nationally in determining the Virginia court had personal jurisdiction over it because the magnitude of the sales showed it was neither unreasonable nor unfair to require foreign corporation to defend a product liability action). Moreover, while the court recognizes that there is later-filed litigation involving the same basic facts currently pending in Connecticut state court, that case does not include Frankie Rowland's. If Norm Bloom is a party to the instant case, all of the parties and claims presumably could be decided (or settled) in this forum in a single suit.

As to the second factor, Virginia has an interest in adjudicating the overall dispute. Although Cape Cod is a Massachusetts resident, and Norm Bloom and Collier are both Connecticut residents—thereby giving Connecticut an interest in this case—the claims between all of the parties in this case are closely related. At least two of the parties (the restaurant and Sam Rust) are Virginia residents, and PFG regularly does business here. Virginia clearly has an interest "in adjudicating the action insofar as it seeks to ensure the economic health of its citizens and the fair resolution of their disputes." Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 479 (4th Cir. 1993). Moreover, Virginia has an interest in protecting persons within its borders (residents or not) from tainted seafood, in ensuring that Virginia's restaurants receive wholesome food products, and in ensuring an avenue for redress and compensation for persons injured within its borders.

The plaintiff referenced in the third factor refers to Cape Cod (the only party in this suit to sue Norm Bloom directly), and neither this factor nor the fourth (the shared interest of the

18

states in obtaining efficient resolution of disputes) plays a significant role in the court's analysis. As to the third, Cape Cod has chosen this forum, after being sued itself in the case, but it is a resident of Massachusetts and thus closer to Connecticut geographically. As to the fourth factor, the court certainly agrees that litigating in two forums is both burdensome and inconvenient—to all the parties involved. It is not clear to the court, however, that the interests of any of the states would be better served by resolution in a Connecticut state court, as opposed to in federal court in Virginia. Moreover, the court notes that the case here was filed more than a year before the Connecticut action and is currently on track to be tried beginning in March 2015. In short, given the number and diverse residencies of the various parties, it does not seem to the court that either the third or fourth factor weighs heavily in favor of—or against—exercising jurisdiction. If, however, all the parties are in a single suit (such as here in Virginia) as a result of Norm Bloom being left in the case, then it would seem to promote the shared interests of the states. The most efficient resolution (whether by trial or settlement) will be one where all the parties are at the table. See Smith, 840 F. Supp. 2d at 933-34 (resolution in one forum with all the parties weighs in favor of substantial justice in exercising jurisdiction).

The fifth factor—the interests of the states in furthering substantive social policies—also slightly favors the exercise of jurisdiction in this case. While Connecticut has an interest in ensuring that its companies abide by their indemnification obligations in the event that they provide unwholesome food and has an interest in ensuring the safety of fish harvested in its waters, Virginia, too, has social interests at stake. As already noted, Virginia has an interest in ensuring the safety of its food chain and the wholesomeness of food at its restaurants served to persons within its borders. In this particular case, the court believes that Virginia's social interests slightly outweigh Connecticut's.

19
Case 7:13-cv-00104-GEC-RSB Document 217 Filed 10/15/14 Page 19 of 20 Pageid#: 2685

Given the foregoing, the court concludes that requiring Norm Bloom to appear and defend here does not violate the traditional notions of "fair play and substantial justice." On balance, the five factors allow the exercise of specific jurisdiction over Norm Bloom in this case.

## **Conclusion**

For the foregoing reasons, Norm Bloom's motion to dismiss for lack of personal jurisdiction will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 15th day of October, 2014.

/s/ Glen Conrad
Chief United States District Judge