CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 26 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT J. COLLIER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LAND & SEA RESTAURANT ) <br> COMPANY, LLC, d/b/a FRANKIE ) <br> ROWLAND'S STEAKHOUSE, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 7:13CV00104 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

This case is presently before the court on the renewed motions for summary judgment filed against Sam Rust Seafood, Inc. ("Sam Rust") by Performance Food Group, Inc. ("PFG") and Land & Sea Restaurant Company, LLC ("Land & Sea"). For the reasons set forth below, both motions will be granted.

### Background[1]

The plaintiff, Robert J. Collier, suffers from Guillain-Barré syndrome, a peripheral neuropathic disorder that can cause weakness and paralysis. Collier contends that the disorder was triggered by paralytic shellfish poisoning, which he claims to have suffered after eating oysters at Frankie Rowland's Steakhouse that were allegedly tainted with saxitoxin.

On March 19, 2013, Collier filed the instant action against Land & Sea, the owner and operator of Frankie Rowland's, asserting claims for negligence and breach of implied warranties. Land & Sea then filed a third-party complaint against PFG, its shellfish supplier, for contribution and/or indemnification. PFG, in turn, filed a fourth-party complaint, which was later refiled as a cross-claim, against Sam Rust, its shellfish supplier, asserting a claim for contractual

---

[1] The court has summarized the facts of this case on several prior occasions. Accordingly, it will outline only the information relevant to the instant motions.

indemnification. Land & Sea later amended its third-party complaint to seek a declaratory judgment that Sam Rust is required to defend and indemnify Land & Sea against Collier's claims.

Both of these claims against Sam Rust – PFG's contractual indemnification claim and Land & Sea's declaratory judgment claim – are based on the indemnification provision in a Foodservice Products Supplier Agreement between PFG and Sam Rust ("the Agreement"), which was executed in 2009. The indemnification provision is included in Section 14 of the Agreement, which also includes a provision on insurance. Section 14 states, in pertinent part, as follows:

> 14. <u>Indemnification: Insurance</u>
> A. <u>Indemnification</u>. Supplier [Sam Rust] will indemnify, defend, and hold PFG, its affiliates and subsidiaries and their officers, directors, employees and agents, as well as any customers of PFG and its subsidiaries harmless from and against any allegations asserted or damages, liabilities, losses, costs or expenses (including reasonable attorneys' fees) sought in any claim, action, lawsuit or proceeding connected with or arising out of any of the following (collectively, "Claims"):
>
> . . . .
>
> 2) Death of or injury to any person, damage to any property, or any other damage or loss resulting or claimed to have resulted, in whole or in part, from any quality or other defect in the Product, whether latent or patent, or failure of the Product to comply with any express or implied warranties or any claim of strict liability in tort relating to the Product . . . .
>
> . . . .
>
> Notwithstanding the foregoing, Supplier shall not be liable to PFG to the extent PFG's damages are determined to result from PFG's gross negligence or willful misconduct. Supplier shall use counsel reasonably satisfactory to PFG in the defense of such Claims. PFG shall, within thirty (30) days after receipt of notice of a Claim against PFG, notify Supplier thereof; provided, however, that failure of PFG to provide such notice to Supplier shall not limit the defense or indemnification obligations, except to the extent that the delay has a material adverse effect upon the ability of the Supplier to defend such Claim.

2

> B. <u>Insurance</u>. Supplier [Sam Rust] will maintain:
> 1) Commercial/comprehensive general liability insurance (including product liability insurance) from a carrier reasonably satisfactory to PFG, in a minimum amount of (A) two million dollars ($2,000,000) combined single limit, for bodily injury and property damage if Products include meat, produce, poultry, pork or seafood . . . ; and
> 2) Excess liability/ umbrella insurance in a minimum amount of (A) ten million dollars ($10,000,000) each occurrence and in the aggregate if Products include meat, produce, poultry, pork or seafood . . . .
> The policies will designate Performance Food Group Company, LLC and its affiliates as additional insureds, and will be endorsed to provide contractual liability insurance in the amount specified above, specifically covering Supplier's obligations to defend and indemnify PFG pursuant to this Section. A certificate of insurance for such coverage (stating that the policies designate PFG and its affiliates as additional insureds) will be delivered to PFG within twenty (20) days of the execution of this Agreement and annually thereafter . . . .

Agreement § 14, Docket No. 181-1.

The indemnification provision of the Agreement was previously addressed in the court's July 21, 2014 memorandum opinion denying Sam Rust's motion for summary judgment on the declaratory judgment claim brought by Land & Sea. In that opinion, the court made several rulings pertaining to the notice obligation in the indemnification provision. Specifically, the court held that PFG is the only party that is required to give notice of a claim to Sam Rust, and that the indemnification provision imposes no such requirement on PFG's customers. See July 21, 2014 Mem. Op. 9-13, Docket No. 171. The court further held PFG first received "notice of a Claim," for purposes of the Agreement, when it was served with a copy of the third-party complaint filed by Land & Sea, and that the notice PFG subsequently provided to Sam Rust "was sufficient . . . to trigger Sam Rust's duty to defend and indemnify Land & Sea." <u>Id.</u> at 13. Accordingly, the court denied Sam Rust's motion for summary judgment.

On August 18, 2014, PFG moved for summary judgment on its contractual indemnification claim against Sam Rust. On August 30, 2014, Land & Sea moved for summary

3

judgment on its declaratory judgment claim. The court held a hearing on those motions on December 22, 2014.

A few months after the hearing, the court ruled that Sam Rust was entitled to the production of certain information generated by Land & Sea's liability insurer, which related to when Land & Sea received notice of Collier's illness and injury, the potential causes of his illness and injury, and his potential claim against Land & Sea. Because the court was of the opinion that those documents could be interpreted to suggest a different factual scenario than that which the court considered in rendering its earlier opinion on Sam Rust's motion for summary judgment, and could necessitate additional discovery on the notice issue raised in response to the motions for summary judgment filed by PFG and Land & Sea, the court denied the motions for summary judgment without prejudice to refiling upon the completion of additional discovery.

PFG and Land & Sea have since renewed their motions for summary judgment. The court held a hearing on the renewed motions on August 26, 2015. The motions have been fully briefed and are ripe for review.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view the facts "in the light most favorable to the non-moving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). To withstand a summary judgment motion, the non-moving party must produce sufficient evidence from which a reasonable factfinder could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in

4

support of [the non-moving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

### I.  PFG's Renewed Motion for Summary Judgment

PFG contends that Sam Rust is contractually obligated to defend and indemnify PFG against Collier's claims, pursuant to Section 14 of the Agreement. PFG emphasizes that Collier claims to have suffered physical injuries after eating an oyster at Land & Sea's restaurant that PFG obtained from Sam Rust and supplied to Land & Sea, and that such injuries are alleged to have resulted from the negligence of Land & Sea and its breaches of the implied warranty of fitness for human consumption. PFG further emphasizes that Land & Sea has, in turn, alleged that PFG is liable to Land & Sea for contribution and/or indemnification. PFG argues that such claims are clearly "connected with or aris[e] out of" a personal injury "resulting or claimed to have resulted, in whole or in part, from any . . . defect in the [shellfish supplied by Sam Rust], whether latent or patent," or the "failure of the [shellfish supplied by Sam Rust] to comply with any express or implied warranties," as required to trigger Sam Rust's indemnification obligations under the Agreement. Agreement § 14(A), Docket No. 181-1.

In response to the instant motion, Sam Rust argues that PFG is not entitled to summary judgment for two reasons. First, Sam Rust argues that there is a dispute of material fact as to whether PFG complied with its obligation to notify Sam Rust of the claims against PFG. Second, Sam Rust argues that it fully satisfied its indemnification obligations by obtaining the insurance coverage required in Section 14(B) of the Agreement, and that PFG should be "estopped . . . from seeking indemnity directly from Sam Rust." Br. in Opp'n to PFG's Mot. for

5

Summ. J. 2-3, Docket No. 186. For the following reasons, the court concludes that Sam Rust's arguments are without merit and that PFG is entitled to summary judgment on its contractual indemnification claim.

Turning first to the notice argument advanced by Sam Rust, the indemnification provision states that "PFG shall, within thirty (30) days after receipt of notice of a Claim against PFG, notify [Sam Rust] thereof." Agreement § 14(A), Docket No. 181-1. The court previously ruled that PFG received notice of the claims asserted by Collier and Land & Sea when it was served with Land & Sea's third-party complaint on May 21, 2013, and that PFG provided timely notice to Sam Rust by filing its fourth-party complaint on June 10, 2013, the same day that PFG also sent a letter to Sam Rust's president requesting that Sam Rust indemnify and defend PFG.

In response to PFG's motion for summary judgment, Sam Rust continues to argue that PFG was put on notice much earlier than the date on which Land & Sea's third-party complaint was filed. However, the only evidence cited to support this argument was rejected in the court's previous opinion:

> To the extent that Sam Rust suggests that PFG had notice of the Claim earlier, when [Jamie] Nelson[, the head chef at the restaurant,] told PFG's [Jennifer] Mika that a diner had become ill and there had been an inspection, the court disagrees. In some circumstances, or under slightly different facts, it might be a question of fact as to whether or not this conversation constituted notice to PFG. In this case, however, it is obvious that the conversation between Mika and Nelson did not, as a matter of law, constitute "notice of a Claim" as defined in the Agreement.

July 21, 2014 Mem. Op. 13-14, Docket No. 171. Despite receiving the opportunity to conduct additional discovery on the issue of notice, Sam Rust has come forward with no new evidence to support its argument that PFG failed to provide timely notice of Collier's claims. In the absence of any evidence indicating that PFG received "notice of a Claim" more than thirty days before PFG filed its fourth-party complaint against Sam Rust and requested that Sam Rust indemnify

6

and defend PFG, the court concludes there is no genuine issue of material fact as to this issue, and that the notice provided by PFG was sufficient, under the Agreement, to trigger Sam Rust's contractual indemnification obligations.

Sam Rust's second argument – that it satisfied its indemnification obligations by maintaining required insurance coverage – is also without merit. Section 14 of the Agreement contains separate provisions governing Sam Rust's indemnification and insurance obligations. In addition to requiring Sam Rust to indemnify and defend PFG against certain types of claims, Section 14 also requires Sam Rust to obtain liability insurance that would cover its indemnification obligations. The court agrees with PFG that the insurance coverage requirements do not limit or supplant the indemnification obligations imposed upon Sam Rust. Instead, the insurance coverage requirements provide additional protection to PFG by ensuring that there are assets available to potentially cover claims such as those made in the instant case. Accordingly, the mere fact that Sam Rust complied with the Agreement's insurance requirements does not relieve Sam Rust of its indemnification obligations to PFG.

For these reasons, the court concludes that there is no genuine dispute as to any material fact, and that PFG is entitled to judgment as a matter of law on its contractual indemnification claim against Sam Rust.[2] Accordingly, the court will grant PFG's renewed motion for summary judgment.

---

[2] As both sides recognize, the scope of Sam Rust's indemnification obligations cannot be quantified until the conclusion of the litigation, either by "a final verdict after all appeals, or settlement." Br. in Opp'n to PFG's Renewed Mot. for Summ. J. 4, Docket No. 359. At that point, PFG will be responsible for disclosing the amount of attorneys' fees incurred in this case, and presenting evidence to establish that such fees are reasonable. To the extent Sam Rust suggests that PFG is precluded from recovering its attorneys' fees because it failed to timely designate an expert witness on this issue, the court disagrees. While expert testimony is sometimes necessary to establish the reasonableness of a request for attorneys' fees, such testimony is not required in every case. See Tazewell Oil Co. v. United Virginia Bank, 413 S.E.2d 611, 621 (Va. 1992) ("In this case, expert testimony was not necessary because of the affidavits and detailed time records [supporting the accuracy of the time billed by the attorney and the reasonableness of the hourly rates charged]."); see also Minn. Lawyers Mut. Ins. Co. v. Batzli, 442 F. App'x 40, 54 n.21 (4th Cir. 2011) ("Expert

7

## II. Land & Sea's Renewed Motion for Summary Judgment

The court likewise concludes that the undisputed facts establish that Land & Sea is entitled to judgment as a matter of law on Count VII of its second amended third-party complaint, in which it seeks a judgment declaring that Sam Rust is required to defend and indemnify Land & Sea against Collier's claims. In response to Land & Sea's motion for summary judgment, Sam Rust argues that Land & Sea failed to provide timely notice of Collier's claims. However, this precise argument was rejected in the court's prior opinion, in which the court held the Agreement only obligated PFG – not Land & Sea – to notify Sam Rust of a claim and that PFG timely did so:

> The Agreement plainly and unambiguously sets out the obligations as between Sam Rust and any of PFG's customers, such as Land & Sea. While it obligates Sam Rust to indemnify and defend PFG and "any customers of PFG," it does not require any notice by those customers, only by PFG. The court may not – and will not – read such an obligation into the Agreement where the parties could have included one and chose not to.
>
> . . . .
>
> Sam Rust – again – ignores the plain language of the Agreement itself. While the indemnity provision expressly confers a benefit on PFG's customers, it imposes no notice obligations at all on those customers; the provision only imposes such an obligation on PFG. Thus, Land & Sea, as a third-party beneficiary, is indeed bound by the terms of the notice provision, but those terms require only that PFG give notice. The parties certainly could have imposed such an obligation on a third-party beneficiary, but they chose not to do so. The obligation will not be imposed by the court here.
>
> . . . .
>
> Here, . . . the court easily concludes that PFG gave timely notice to Sam Rust – the only notice required by the Agreement – and that Sam Rust is thus obligated to defend and indemnify PFG and Land & Sea against Collier's claims.

July 21, 2014 Mem. Op. 10 & 13, Docket No. 171.

---

testimony is not necessarily required if lay testimony can establish the reasonableness of the fee award.").

8

Case 7:13-cv-00104-GEC-RSB   Document 415   Filed 10/26/15   Page 8 of 9   Pageid#: 13638

While Sam Rust obviously disagrees with the court's rulings on the notice issue, the court remains convinced that Land & Sea was not required to separately notify Sam Rust of Collier's claims and, thus, that Sam Rust's notice defense is without merit. Because the undisputed facts establish that Sam Rust is contractually obligated to defend and indemnify Land & Sea against Collier's claims, the court will grant Land & Sea's renewed motion for summary judgment on its declaratory judgment claim against Sam Rust.

## Conclusion

For the reasons stated, the court will grant the motions for summary judgment filed against Sam Rust by PFG and Land & Sea. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 26th day of October, 2015.

*/s/ Glen Conrad*

Chief United States District Judge